UNITED STATES, Appellee

v

GARY D. HENRY, Private First Class, U. S. Army, Appellant

No. 27,573

May 3, 1974

*Captain Gilbert J. Weller* argued the cause for Appellant, Accused. With him on the brief was *Colonel Arnold I. Melnick.*

*Captain Robert B. Kurzweil* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen,* and *Captain Robert C. Roth, Jr.*

## OPINION OF THE COURT

Duncan, Chief Judge:

At Fort MacArthur, California, appellant was convicted by a general court-martial, contrary to his pleas, of wrongful possession for sale, and wrongful sale, of LSD, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a bad-conduct discharge, confinement at hard labor for 1 year, partial forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence but suspended forfeitures in excess of $190 per month for 12 months. The U. S. Army Court of Military Review affirmed the findings and sentence on July 25, 1973.

At trial appellant claimed that he had been entrapped by government agents. On cross-examination, after his objection was overruled, appellant admitted participation in a sale of LSD subsequent to the alleged date of the wrongful sale of LSD for which he was charged. He assigns as error the introduction of the evidence of the subsequent sale. We believe that the evidence was properly before the court and relevant to the entrapment issue. The appellant also urges that the trial judge erred in failing to instruct upon the theory that appellant was gratuitously acting only as an agent for the purchaser of LSD. With that contention we agree.

Private First Class Juan A. Diaz, an informant for the CID, and Private First Class Gary D. Henry, the appellant, both testified at trial, and their substantially differing accounts of transactions in April 1971 give rise to the issues we review.

### DIAZ

Diaz, a Spanish-speaking Puerto Rican soldier, testified through a court interpreter. He stated that he first saw the appellant on April 8, 1971, although he did not speak to him until April 13. On April 14, a second conversation was held concerning the possible sale of drugs which resulted in appellant writing on a torn napkin the words "purple double domes mescaline Gary Henry," and some numbers. On the morning of April 16,[1] Diaz stated that he met appellant again and arrangements were made for a "business" meeting at 11:00 a.m. in Building 360, appellant's barracks. After consulting with CID agents, Diaz arrived at appellant's barracks with a marked $10 bill. There he received six LSD tablets from appellant in return for the $10 bill given him by the CID. The sixth pill, Diaz claimed, was free as an incentive to continue buying. Diaz also contended that appellant took the pills from a plastic bag hidden in his underpants and put them in a small film container which Martinez obtained from appellant's locker. Diaz denied exerting any pressure on Henry to make the sale.

### HENRY

Appellant stated on April 13 or 14, 1971, he was in the messhall and talked with Diaz, whom he had met several weeks earlier and had seen five to ten times since then. Diaz asked him where he could obtain drugs or would appellant obtain drugs for him. No arrangements for a narcotics sale were made that day.

The next meeting with Diaz was on the morning of April 16. Diaz again asked if drugs could be procured. The

---

[1] On April 13, 14, and 16, the conversations with Henry were partially in English and partially in Spanish with Marti- nez, a Spanish-speaking friend of the appellant, acting as an interpreter.

appellant first said no, then Diaz insisted and appellant told him that he knew a person "who was selling mescaline and LSD and that he might be able to talk to him about it." Diaz seemed unfamiliar about mescaline and LSD. At Diaz's request, Henry wrote on a napkin, " 'Mescaline,' " " 'Purple Double Domes.' " Diaz was told to stop at his barracks during lunch so that he could introduce him to a seller. Appellant stated that he was referring to Gray, a fellow serviceman, who had told him of his drug dealing 2 days earlier and who had shown appellant his hiding place for drugs over a beam in the barracks ceiling. When Diaz arrived at the barracks, Gray was not there. Henry told Diaz "that the best thing to do would be to come back later." Diaz was "acting kind of nervous and upset about the whole thing, and he said that a friend had given him some money and that it was important that he got it right then." Diaz persisted in his request for the drugs.

As a result of Diaz's importunities, appellant states that he consented to make the sale in Gray's absence. Appellant denied taking the pills from his clothing, but related that he took them from the hiding place, and that all six pills were included in the $10 selling price. Appellant maintained that Diaz initiated all discussions concerning drugs, that he neither sold nor used drugs before April 16, 1971, and that prior to the time of the alleged sale he had not formed an intent to sell drugs. He testified that he gave the $10 to Gray when he returned. Appellant specifically denied being Gray's agent and said that he did not have Gray's permission to sell drugs.

On cross-examination, trial counsel questioned appellant about a drug transaction 5 days after the alleged April 16 sale, and appellant admitted that he sold 25 LSD tablets to David Beck, a state undercover narcotics agent who was posing as Diaz's friend. Appellant explained that Diaz approached him as he was about to enter a liquor store and stated that he had a friend who wanted to purchase a large quantity of LSD. Appellant informed him that Gray had left for Long Beach and that he "just . . . couldn't help him." Diaz then became "very angry" and at Diaz's insistence appellant stated that he acquiesced and sold the drugs to Diaz's friend since "it meant that much to him." Appellant again maintained that he did not have Gray's permission to sell the drugs.

■ The military judge and counsel for both parties agreed that the defense of entrapment had been interposed and was the proper subject of a jury instruction. There appears to be no dispute that where the evidence of record tends to show that acts or statements of government agents dominated an accused's intent to the extent that he commits the crime envisioned and originated by the agents, entrapment is a defense. Paragraph 216e, Manual for Courts-Martial, United States, 1969 (Rev). And after a remarkable history of diverse opinions by members of the Supreme Court, see United States v Russell, 411 US 423 (1973); Sherman v United States, 356 US 369 (1958); Sorrells v United States, 287 US 435 (1932), a majority of that Court has again recently endorsed the use of evidence by the Government to show that one claiming entrapment was predisposed to commit the act just prior to the alleged unfair inducement. United States v Russell, supra. Not disputing the general rule, appellant argues that evidence of uncharged misconduct introduced to show predisposition to the crime must be limited to conduct prior to the government agent's enticement to crime. We disagree.

■ When the defense of entrapment is interposed and a trial judge using sound discretion concludes that the probative value of subsequent misconduct occurring reasonably contemporaneously with the crime charged outweighs the risk of undue prejudice which attends its introduction, we see no error in allowing the Government this evidentiary mode of rebuttal. United States v Rodriguez, 474 F2d 587 (5th Cir 1973); United States v Santore, 164 F Supp 362 (ED Pa 1958), aff'd, 270 F2d 949 (3d Cir 1959); State v Turner, 104 Ariz 469, 455 P2d 443 (1969); People v Calvano, 30 NY2d 199, 282 NE2d 322 (1972). As the court in United States v Santore, supra, stated:

A defendant's state of mind may be shown by events reasonably contemporaneous with, even though after, the event, since such events justify an inference as to his state of mind at the time of the crime charged.

164 F Supp at 366.[2] An accused claiming entrapment "cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense." Sorrells v United States, supra at 451–2.

 A sale of drugs under circumstances similar to a sale only 5 days previous is relevant in that it tends to show that the criminal design for the original sale was not implanted into the appellant's mind by the alleged government provocateurs. The trial judge did not abuse his discretion in admitting this evidence.

The appellant also maintains as a theory of defense that he was acting only as a procuring agent for the purchaser. He claims to have been reluctant to procure the drugs for Diaz and did so only because of Diaz's persistence.

 When narcotics are obtained from a seller, at no profit, by an accused at the request of a government informer and for no other reason, there can be no conviction for selling narcotics to his principal. United States v Suter, 21 USCMA 510, 45 CMR 284 (1972); United States v Fruscella, 21 USCMA 26, 44 CMR 80 (1971); United States v Stewart, 20 USCMA 300, 43 CMR 140 (1971). See also United States v MacDonald, 455 F2d 1259 (1st Cir 1972).

Government counsel say that the facts fail to show that Henry acted on behalf of Diaz. They argue that appellant personally passed title to Diaz for a price at the time the drugs were delivered. The Government directs our attention to two sections of the California Commercial Code which indicate the title to the drugs passed to Diaz at the time and place of appellant's physical delivery.[3]

Resort to sales law concepts does not provide the solution to the agency issue confronting us. The Government's position appears to be that since the April 16 transaction was then unknown to Gray, he could have passed title only through an agent, and since title, by operation of law, passed on that date, *ipso facto,* Henry acted on behalf of Gray, not Diaz. Although we believe that the issue of whether or not Henry acted for Gray is drawn by the facts, the agency issue contended for by the appellant is also formed. The evidence reasonably accommodates the possible fact determination that Henry, acting only on behalf of Diaz, with knowledge of Gray's willingness to sell his drugs, procured the drugs, depending on Gray's later approval, and gave them to Diaz. Whether the title passed on April 16 is not critical to our decision that the issue of procurement agency is present. We turn therefore to the instructions on the issue. The judge instructed regarding agency, as follows:

There is an issue of fact in the case for you gentlemen to resolve. You are to find the facts from the evidence, you have heard, but there is an issue of fact in this case as to whether the accused was acting alone in Building 360 on 16 April 1971 at Fort MacArthur, or whether he was acting as an aider or abettor to one Gray, or whether he was acting as neither of these and only as an agent or a conduit or in behalf of Gray, that is, whether or not the accused was acting

---

[2] In non-entrapment cases, military courts have ruled that subsequent misconduct can be relevant to prove the existence of an intent at an earlier time. United States v Miller, 33 CMR 563 (ABR 1963); United States v Dove, 21 CMR 472 (ABR 1956), *pet. denied,* 7 USCMA 781, 22 CMR 331 (1956).

[3] A sale "consist[s] in the passing of title from the seller to the buyer for a price." Cal Comm Code § 2106(1) (West 1964). Section 2401(2) states that:

Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods.

See Uniform Commercial Code §§ 2-106(1) and 2-401(2).

as an agent who had neither guilty knowledge nor intent nor any *mens rea,* that is to say, one without a criminal purpose or an inclination. . . .

If the accused here, you find as a fact from the evidence before you, was acting only as an agent as I have above described and elaborated upon that phrase—of Gray, acting for and on behalf of Gray, as an agent of Gray, and not as an aider or abettor, then of course you must acquit him of the two offenses there which are charged against him. I tell you the burden is on the government to establish the accused's guilt by legal and competent evidence beyond any reasonable doubt, as I have already indicated in these two specifications and charge. That is, the burden is on the government to show that the accused was either acting alone in the premises or that he was acting as an aider or abettor, and the burden is on the government to show beyond a reasonable doubt that he was not acting as an agent of Gray, as I have indicated already. There is no burden on the accused, under the law, in this matter.

Accordingly, I tell you that unless you are convinced beyond a reasonable doubt that the accused was acting alone in the premises or acting as an aider or abettor to Gray as I have elaborated upon that phrase, and that he was not acting only as an agent for Gray as I have elaborated upon that phrase, then you must acquit him of the specifications and the charge. If you are convinced beyond a reasonable doubt that the accused acted alone as above—as I have instructed you above,

or just a moment ago, or if you are convinced beyond a reasonable doubt that he acted as an aider or abettor as I have elaborated upon that phrase, and if you are convinced beyond a reasonable doubt that he was not an agent for Gray—a mere agent as I have elaborated upon that phrase—only an agent, then I instruct you as follows: [instruction on entrapment followed].

■ As the Government implicitly concedes, these instructions are erroneous in that they refer to accused's acquittal only if he was acting as Gray's agent and not on behalf of Diaz. In light of the circumstances, we find that the military judge's failure to give the proper procurement agency instruction constituted reversible error. The military judge should have instructed the jury that the appellant should not be convicted of selling LSD if they believed that he undertook to obtain drugs in behalf of Diaz at his request, without profit, and did, in fact, obtain LSD from Gray, albeit in his absence, and if they believed that appellant was not personally selling or associated with Gray in selling.

The decision of the Court of Military Review regarding the conviction for the wrongful possession of LSD is affirmed; the decision regarding the wrongful sale of LSD is reversed. The record of trial is returned to the Judge Advocate General of the Army. The Court of Military Review may reassess the sentence on the basis of the remaining finding of guilty, or order a rehearing on the wrongful sale charge and sentence.

Judge QUINN and Senor Judge FERGUSON concur.