UNITED STATES of America

v.

James SANTORE.

Cr. No. 19550.

United States District Court
E. D. Pennsylvania.

July 25, 1958.

Henry J. Morgan, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Claude O. Lanciano, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

Defendant was tried and found guilty by a jury under four counts of an Indictment charging him with violations of 21 U.S.C.A. § 174 and 26 U.S.C.A. § 4705(a) as a result of selling six ounces and 115 grains of heroin on March 23, 1957, for $3,150 (N. T. 58)

and 5 ounces and 317 grains of heroin on April 3, 1957, for $3,500. The sales were made to agents of the Bureau of Narcotics, United States Treasury Department, and the defendant's sole defense was entrapment. The case is now before the court on defendant's motion for new trial.

The agents testified that on February 26, 1957, they told defendant that they had been referred to him by "some of his friends in Baltimore and New York" if they "wanted to make any purchases of narcotics in this area" (N. T. 18). Defendant asked one of the agents if they knew "Harry Riccobene" (N. T. 19) and stated that Riccobene was "a good source for heroin" in this area (N. T. 21), but that "he was at the present time serving a sentence for narcotics." One of the agents testified that Santore told him that "he could get me heroin, but his connection wouldn't sell anything less than a half a kilo. I told him that for the first time I wouldn't purchase a half kilo, but I would purchase a quarter kilo, and told me that quarter kilo would cost me $3500. I told him that that was kind of high. * * * We discussed further the price, and he told me that it would have to be at least $3500. for the quarter kilo. I told him that I would let him know whether or not I wanted to buy the quarter kilo." (N. T. 21).[1]

After a few subsequent meetings, during which defendant introduced the agent to Frank Valli, who said, in defendant's presence, that he thought he could make a connection to secure heroin (N. T. 53), the first sale was made and,

subsequently, the second sale took place for a greater price since defendant wished to retain more of the sales price for himself. One-sixth grain is the average heroin content of a dose taken by an addict, so that there were thousands of such doses in the quantity involved in each of the two transactions.[2]

The question of whether or not entrapment was shown was properly left up to the jury.[3] When entrapment has been interposed as a defense, the prosecution has the burden of showing that the defendant was already disposed to make sales of narcotics at the time of the purchases by the Government agents. See United States v. Moses, 3 Cir., 1955, 220 F.2d 166.[4] The testimony of the Government agents, if believed by the jury, was sufficient to show defendant's knowledge of the business and predisposition to commit a narcotics violation.[5] Defendant's readiness to engage in the sales of such large amounts of heroin, his familiarity with quantities, prices, quality, and sources of supply for heroin were ample to justify the jury in finding defendant's predisposition to engage in the narcotics traffic.[6] The testimony of these agents tended to prove that the purpose of the Government agents in contacting the defendant was to ascertain whether the defendant was already engaged in an unlawful business and not to solicit the commission of a crime, thus rejecting the entrapment defense.[7]

For these reasons, the defendant's contentions that the verdict was against the law, the evidence, and the weight of the evidence are rejected.

1. It was testified that a kilo is 2.2 pounds (N. T. 21).

2. There are 437½ grains in an ounce.

3. See Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 and United States v. Brandenburg, 3 Cir., 1947, 162 F.2d 980, 982.

4. In Carlton v. United States, 9 Cir., 1952, 198 F.2d 795, 798, the court said: "* * * once the entrapment defense is relied on the burden falls upon

the prosecution to show that reasonable grounds existed for believing that the accused was engaged in the particular unlawful business charged."

5. See United States v. Brandenburg, 3 Cir., 1947, 162 F.2d 980.

6. See Sherman v. United States, 9 Cir., 1957, 241 F.2d 329.

7. See Trice v. United States, 9 Cir., 1954, 211 F.2d 513, 516.

■ Defendant's fourth reason for a new trial is based on the trial judge's permitting the defendant to be questioned on purchases of narcotics after the last transaction charged in the Indictment (April 3, 1957).[8]

The defendant testified, inter alia, on direct examination that (1) he had been a pipefitter and plumber by trade and also handled fighters (N. T. 83), he never dealt in or handled narcotics prior to February 26, 1957 (N. T. 84–8), and (3) he had been arrested three times on lottery charges (N. T. 91–2). In answer to questions on cross-examination concerning his 1957 income, he testified that his total income for that year was a couple hundred dollars from his interest in a fighter named Robinson, less than this amount from his interest in a fighter named Bailey, some income from "booking a little number on the side," and less than $500 which he received for making these two purchases of narcotics for the agents (N. T. 110–112). Referring to the agents as "they," he testified at N. T. 121:

"* * * they made a bird dog out of me. They turned around that I had to bring stuff back to them, they were paying me, *the people* wouldn't deal with them, and they kept me in the scene at all times." (Emphasis supplied.)

Subsequently, defendant testified that his only contact for securing narcotics was Frank Valli (N. T. 138), and he was then required to answer this question (N. T. 140):

"Is the only connection you ever had for making narcotic buys Valli, or did you have some others?"

The defendant gave the following answer to the question and his counsel moved for the withdrawal of a juror:

"* * * they dragged me on for a year making connections. Youse want to know it; youse want to send me to jail? Sentence me and get it over with.

"The Court: Now, just a minute.

"The Witness: Well, that is the way it is. They have been shanghaiing me, torturing me for two years, these people. Now youse are trying to drive me crazy."

■ This action by the court[9] does not justify the grant of a new trial (see F.R.Crim.P. 33 and 52, 18 U.S.C.) for each of these reasons, among others:

■ A. Defendant's testimony on direct examination concerning his sources of income and activities, as well as his previous testimony on cross-examination that "the people" would not deal with the agents and yet that Valli was "the only one (he) knew" for securing the narcotics (N. T. 138), justified the Government in asking whether Valli was "the only connection you ever had for making narcotic buys." Where a defendant gives inconsistent testimony (first indicating that he dealt with "the people" and then that he dealt only with one man), the prosecution is entitled to probe into sources a few months after the transactions in issue in an attempt to elicit the truth as to sources in those transactions.[10] This is particularly true

---

8. See paragraph 4 of defendant's Motion for New Trial (Document No. 7 in Clerk's file).

9. The defendant also contends in his brief that it was reversible error for the court to permit defendant to be asked on cross-examination whether he knew two acquaintances of his were in the narcotics business. Since defendant had contended consistently that Valli was his sole contact for narcotics prior to April 3, 1957 (see, for example, N. T. 138 & 147), questioning as to other possible sources

of narcotics used by defendant during this period was permissible. Also, defendant made no objection to the questions asking whether defendant knew his acquaintances (Casella and Malfi) were "in the narcotics business" (N. T. 151). If any error was involved, it was clearly harmless in view of the trial judge's statement to the jury that whatever the defendant did after April 3, 1957, was not "particularly relevant" (N. T. 143).

10. The trial was only a year after the transactions in issue and the defendant

where the defendant described such a limited scope of his 1957 income and activities.[11]

■ B. The defense of entrapment being based on the predisposition of the defendant to commit the particular type of crime involves the proof of his state of mind in entering into the transaction. See Sorrells v. United States, 1932, 287 U.S. 435, 451, 53 S.Ct. 210, 216, where the court said:

"* * * and if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense."

■ A defendant's state of mind may be shown by events reasonably contemporaneous with, even though after, the event, since such events justify an inference as to his state at the time of the crime charged in the indictment. See 2 Wigmore on Evidence (3d Ed. 1940) §§ 302 (p. 196) and 316; United States v. Blount, 2 Cir., 1956, 229 F.2d 669, 671; Enriquez v. United States, 9 Cir., 1951, 188 F.2d 313, 316; United States v. Corry, 2 Cir., 1950, 183 F.2d 155, 157; Strader v. United States, 10 Cir., 1934, 72 F.2d 589, 591.[12] In the Enriquez case, supra, the court said, 188 F.2d at page 316, "It would seem that evidence of the prior conviction had

a distinct probative value in that it tended to negative innocence of motive or intent."

In Sauvain v. United States, 8 Cir., 1929, 31 F.2d 732, 733, the court said:

"However, it appears here that the defendant claims he was entrapped; to meet that issue, the government may properly show that the defendant was a dealer and not a victim of zealous officers. The Sixth Circuit has ruled that evidence of other transactions are admissible to rebut the defense of entrapment. Billingsley v. U. S., 6 Cir., 274 F. 86."

■ C. Since the trial judge made clear by statements in the presence of the jury [13] that the trial was only concerned with defendant's state of mind on March 23 and April 3, any error in permitting the jury to hear this testimony was harmless. See F.R.Crim.P. 52(a).

In Sorrells v. United States, 4 Cir., 1932, 57 F.2d 973, at page 978, reversed on other grounds, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, the court made the following statement concerning a sale six weeks after the transaction covered by the indictment:

"Little need be said as to the admissibility of the evidence as to which exception was taken. Assuming without deciding that it was not admissible [but see Sauvain v. U. S., 8 Cir., 31 F.2d 732, and Billingsley v. U. S., 6 Cir., 274 F. 86], its ad-

had been in custody at least since February 1958, so that the period when he could have had these sources was less than a year. For this reason, his testimony quoted above from N. T. 140, that he was tortured for two years, is exaggerated, to say the least.

11. Cases supporting such cross-examination include Carlton v. United States, 9 Cir., 1952, 198 F.2d 795, 797–799; Fisk v. United States, 6 Cir., 1922, 279 F. 12, 17.

12. The case of Paris v. United States, 8 Cir., 1919, 260 F. 529, at page 531, relied on by defendant, is inapplicable since the opinion emphasized that intent

was not an element of the crime then before the court.

13. The charge emphasized that the only transactions involved were those on March 23 and April 3 (N. T. 179). The trial judge also made this statement in the presence of the jury during the trial (N. T. 143):

"* * * the witness has testified he continued in this business as the result of the urging of these agents, and what he did after April 3rd wouldn't be particularly relevant. * * * We are only concerned with two instances here. They are the only instances with which the defendant is charged in this indictment."

mission could not have prejudiced defendant's cause for the reason that the evidence both of the government and of the defense showed without question that defendant made the sale of which he was convicted, and the only question which defendant raised with regard thereto was as to entrapment. In such case, evidence of a subsequent sale could not by any possibility have affected the result."

Order

And now, it is ordered that defendant's motion for new trial is denied.