(No. 51829)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. BILL TIPTON, Appellee.

*Opinion filed February 22, 1980.*

CLARK, J., dissenting.

William J. Scott, Attorney General, of Springfield, and Nicholas G. Byron, State's Attorney, of Edwardsville (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Raymond F. Buckley, Jr., and Ann E. Singleton, of State's Attorneys Appellate Service Commission, of Mount Vernon, of counsel), for the People.

John H. Reid, Deputy Defender, and Patricia L.

Morris, Assistant Defender, of the Office of the State Appellate Defender, of Mount Vernon, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Steven Jones and defendant, Bill Tipton, were charged by indictment with selling a substance represented to be a controlled substance (Ill. Rev. Stat. 1975, ch. 56½, par. 1404). The white powder that they had sold contained no controlled substance. Jones pleaded guilty and testified on behalf of the State at defendant's trial. A jury returned a verdict of guilty against defendant, and the circuit court of Madison County entered judgment and sentenced defendant to two years' probation, with conditions. The appellate court reversed, finding entrapment as a matter of law (68 Ill. App. 3d 193), and we allowed the State's petition for leave to appeal.

The State's first witness was Michael T. Boyne, a narcotics agent with the Metropolitan Enforcement Group of Southwestern Illinois (MEGSI). Boyne first testified that on September 1 or 2, 1975, he went to defendant's home, accompanied by fellow agent Charles Nunn and an informer, Nancy Niehaus. Niehaus, who had briefly dated defendant, arranged the meeting to see if defendant could find any cocaine. Defendant's nine-year-old brother was also present.

Relating his account of the meeting, Boyne testified, "We had a general drug conversation and Nancy had asked him if he got the cocaine for us. *** He said that he would have to make some phone calls. *** He was telling us how he had taken some acid and he was out looking at the swimming pool and he kept telling the little brother to get out of the room and he told us that he was really funny when he gets him high." In his own testimony, defendant later admitted making the statement about getting his brother high. Also during the meeting, according to Boyne, defendant attempted two

or three times to telephone someone whom he referred to as "Steve" in an effort to locate cocaine.

Boyne further testified that on September 3, 1975, he called defendant at 4:30 p.m., and defendant informed Boyne that a meeting was arranged with a third party for 6 p.m. that day at the Funland Miniature Golf Course. According to Boyne, defendant indicated that the third party had $30 worth of cocaine which could be broken down into six or seven "dime" bags. Boyne drove to defendant's home, picked up defendant, and they then proceeded to Funland. On cross-examination, Boyne explained that he picked up defendant because he did not know the party with the cocaine.

Boyne testified that they arrived at Funland at approximately 5:40 p.m. and began playing pinball. A few minutes later, Steve Jones arrived and defendant introduced him to Boyne. According to Boyne, he, defendant and Jones engaged in general conversation, and defendant shortly thereafter asked Jones if he had the "stuff." Jones suggested that they go to his car.

Boyne testified that, while in the car, he, defendant and Jones again held a general conversation on different topics, including drug usage, and that Jones handed him an aluminum package in exchange for $30 in MEGSI funds. Boyne testified that Jones said that the package contained "half cocaine and half speed." Laboratory tests, however, later indicated that no controlled substance was present.

Boyne also testified that Jones offered to get Boyne LSD, cocaine or anything else that Boyne wanted. According to Boyne, Jones said that Boyne could contact him through defendant. Over objection of defense counsel, Boyne then testified that defendant arranged a similar sale with Jones approximately one month later, on October 1, 1975.

On cross-examination, defense counsel asked a series of questions to ascertain the nature of Boyne's contacts

with defendant. In response to these questions, Boyne testified that he never met defendant before September 1975; that, following their initial meeting, plans for a drug sale were not consummated; that he never saw defendant handle or receive money for drugs; that defendant did not say that he had any drugs but that he could get some; that defendant used the word "cocaine" rather than some slang term; that defendant never solicited Boyne to sell drugs; that, following the September 3 sale, Boyne called defendant; and that, following the October 1 sale, Boyne called defendant once or twice more without any results, either because defendant could not get anything or because Boyne failed to follow up on his initial effort.

On redirect examination, Boyne testified that, if he called defendant and defendant did not then have anything, defendant would tell him to call back.

Steven Jones also testified on behalf of the State. Jones first testified that he received several phone calls from defendant in which defendant asked whether Jones had obtained any cocaine for Nancy Niehaus' "boyfriend," referring to Boyne. Jones reiterated the details of the September 3 meeting and sale, and he then testified that he knew defendant from school and had known him for approximately 1½ years.

On cross-examination of Jones, defense counsel again propounded a series of questions to ascertain the nature of the witness' contacts with defendant. Jones testified that defendant never touched the drugs sold or received any money from their sale; that defendant never before had brought anyone to buy drugs; and that he had no agreement with defendant to arrange sales. Though apparently not anticipated by defense counsel, Jones also testified that, following the September 3 sale to Boyne, defendant brought a friend to buy drugs but that no more drugs were actually sold.

In his defense, defendant pleaded entrapment (Ill.

Rev. Stat. 1975, ch. 38, par. 7—12), claiming improper inducement by Boyne and Niehaus, the latter said to be an agent of the government by virtue of her role as a paid informer. Defendant testified that he had dated Niehaus for three or four weeks but had ceased dating her a couple of weeks before Niehaus brought Boyne and fellow MEGSI agent Nunn to defendant's home. At his home, according to defendant, the parties talked on various topics but not drugs.

Also according to defendant, on the next day, Niehaus called and asked if defendant could get her some cocaine, and he replied that he did not know and would have to see what he could do. According to defendant, Niehaus called him again, asking defendant again to try to get some cocaine and saying that the favor would be returned. Defendant testified that he had thought no more of finding cocaine until Niehaus called and again asked if he had found anyone to sell cocaine to Boyne.

Defendant testified that he saw Steve Jones at school the next day, and Jones said that he was selling cocaine and that defendant should let him know if he knew of anyone who wanted to buy any. Defendant testified that he had known Steve about six months and that it was known around school that Steve was "into drugs."

Defendant testified that, following the discussion with Jones, he received a call from Niehaus asking if he found anyone who would sell her cocaine, and he gave her Jones' name. According to defendant, he then informed Jones that he knew someone who wanted to buy cocaine, and Jones suggested Funland as a meeting place. Defendant testified that he never used drugs, never had done anything like this before, and had arranged the sale only to do Niehaus a favor. He also testified that Niehaus thanked him for arranging the sale and said that she would return the favor.

Defendant next testified that, on the day of the sale, September 3, he, his brother and a friend were planning

on going to Funland to play pinball and were waiting for the friend to finish washing dishes when Boyne arrived, asking where Funland was located. According to defendant, he gave Boyne directions but Boyne asked defendant to accompany him since both were going to Funland and since Boyne was not sure where it was located. Defendant agreed, and he and his brother left with Boyne.

Defendant's account of the details of the actual sale followed and was substantially similar to that related by Boyne. On cross-examination, defendant admitted that the idea of getting the cocaine from Jones originated with him, but he reiterated that the sole reason for his involvement was his desire to do Niehaus a favor.

Following the close of defendant's evidence, the jury returned a verdict of guilty and the circuit court entered judgment, sentencing defendant to two years' probation with certain conditions, including the requirement that defendant spend the last 60 days of probation in the county jail. The appellate court reversed on the basis of its finding that entrapment existed as a matter of law.

In its appeal to this court, the State argues that the appellate court erred in finding entrapment. It also challenges the appellate court's ruling that part of Boyne's testimony, concerning defendant's involvement in a subsequent drug transaction, is inadmissible. Because of the potential impact of Boyne's testimony on the entrapment issue, we address the evidentiary issue first. The parties have cited no cases in this jurisdiction directly in point, and our research has revealed none. We have examined analogous cases in this State, however, and we now hold, in accordance with the majority of other jurisdictions addressing the point, that evidence of a defendant's subsequent activities is admissible when a defendant pleads entrapment if the evidence is relevant to the issue of predisposition.

In the oft-cited *Sorrells v. United States* (1932), 287

U.S. 435, 451-52, 77 L. Ed. 413, 422, 53 S. Ct. 210, 216, the United States Supreme Court held that "if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense." In accordance with this principle, most courts addressing the issue of the admissibility of subsequent acts have approved the use of such evidence when a defendant raises the entrapment defense. (Annot., 61 A.L.R.3d 293, 319-23 (1975), citing *United States v. Rodriguez* (5th Cir. 1973), 474 F.2d 587, 589-90; *United States v. Santore* (E.D. Pa. 1958), 164 F. Supp. 362, 366; *Aller v. State* (1974), 61 Wis. 2d 740, 741, 214 N.W.2d 431, 432; *State v. Monsoor* (1973), 56 Wis. 2d 689, 703, 203 N.W.2d 20, 27; *People v. Calvano* (1972), 30 N.Y.2d 199, 206, 282 N.E.2d 323, 326, 331 N.Y.S.2d 430, 436; *Berlin v. State* (1971), 12 Md. App. 48, 59-60, 277 A.2d 468, 474-75; see also *United States v. Smith* (2d Cir. 1960), 283 F.2d 760, 762-64; but see *United States v. Daniels* (5th Cir. 1978), 572 F.2d 535, 538; *State v. Anaya* (N.M. App. 1969), 81 N.M. 52, 54-55, 462 P.2d 637, 639-40.) The principle to be derived from these cases is that evidence of subsequent acts is admissible if relevant to the issue of predisposition of the defendant to commit the offense charged; relevancy is measured in terms of similarity and proximity in time.

More important than the fact that other jurisdictions have adopted this rule is that the principle upon which the rule is based can be found in the treatment of analogous situations under existing Illinois law. As Gard states in his text, "Both prior conduct *and subsequent conduct* may be relevant ***, depending on the circumstances and the probative value of the collateral conduct sought to be proven. Evidence of other specific, though similar acts, may not be proven simply to show that,

having done the same thing before, the person is likely to have done it on the occasion in issue. This would open the door too wide to the trial of side issues to the neglect of the immediate issue to be resolved. But for the limited purposes of proving state of mind, motive, intent, habit, pattern, or plan, conduct on other occasions is often the best if not the only evidence by which the facts can be established." (Emphasis added.) (S. Gard, Illinois Evidence Manual R. 4:09, comment, at 162-63 (2d ed. 1979); see, *e.g., People v. Lehman* (1955), 5 Ill. 2d 337, 343 (subsequent act admissible to show plan); *People v. Allen* (1971), 1 Ill. App. 3d 197, 200-02 (subsequent act admissible to refute argument that the defendant lacked intent); *People v. Knox* (1967), 90 Ill. App. 2d 149, 160-61 (subsequent act admissible to show plan).) The cases cited and the passage from Gard do not specifically approve of the use of evidence of subsequent acts when a defendant pleads entrapment, but we believe that such a conclusion is logically required. By pleading entrapment, a defendant opens the door for the admission of evidence which might otherwise be inadmissible, and it would be inconsistent with this concept to exclude, in an entrapment case, evidence deemed admissible in other contexts. In *People v. Stadtman* (1974), 59 Ill. 2d 229, relied upon by the appellate court in holding that evidence of subsequent acts is inadmissible, neither predisposition nor any other issue was raised on which "other acts" would be relevant, and the appellate court's reliance on that case was therefore misplaced.

In reviewing the present case, we cannot say that the circuit court abused its discretion in admitting agent Boyne's testimony that defendant arranged a similar drug deal approximately one month after the offense for which defendant was on trial. By virtue of defendant's plea of entrapment, the question of predisposition was raised, and the circuit court could reasonably conclude that evidence of similar activity one month later was of pro-

bative value on this issue.

The second issue raised by the State in its appeal is whether the appellate court erred in finding entrapment as a matter of law and setting aside the jury's verdict of guilty. Once the entrapment defense is raised, it becomes incumbent upon the State to prove beyond a reasonable doubt that entrapment did not occur. (Ill. Rev. Stat. 1975, ch. 38, par. 3—2(b); *People v. Dollen* (1972), 53 Ill. 2d 280, 284.) The question of entrapment in a jury trial, however, is usually one for the jury, unless the trial court or a reviewing court can find entrapment as a matter of law. *Sherman v. United States* (1958), 356 U.S. 369, 377, 2 L. Ed. 2d 848, 854, 78 S. Ct. 819, 823; *People v. Andreano* (1978), 64 Ill. App. 3d 551, 556-57.

In finding entrapment, the appellate court cited the encouragement of Boyne and Niehaus, and it found that defendant was not predisposed to commit the offense. As to this latter point, however, it seems apparent from our review of the record, and as argued by the State, that the appellate court relied heavily on a presentence report in characterizing defendant as an innocent, shy individual particularly susceptible to the urgings of an ex-girlfriend. Statements contained in the report, however, were those of an apparently sympathetic probation officer, were not before the jury, and should not be considered by a reviewing court and used as a basis for setting aside a jury verdict. *Cf. People v. Morgan* (1977), 69 Ill. 2d 200, 206 (preliminary hearing report improperly considered by reviewing court).

Viewing the evidence presented to the jury, we find no basis for setting aside its verdict. The jury could have found that defendant was predisposed to commit the offense, and it therefore could have rejected the entrapment defense notwithstanding the involvement of Boyne and Niehaus. In this regard, we note defendant's admission that the idea to contact Steve Jones originated with him; that defendant telephoned Jones two or three times

during his initial meeting with Boyne and Niehaus; that defendant said that he had taken acid and that his brother is funny when he gets him high; that defendant arranged a second sale for Boyne one month after the September 3, 1975, sale; and that defendant arranged a third sale for someone other than Boyne sometime after the September 3, 1975, sale. In sum, the evidence indicated to the jury defendant's familiarity with drugs, his knowledge of a supplier, and his willingness to accommodate those desirous of obtaining drugs. This, we believe, is sufficient to sustain the jury's verdict. The fact that Boyne and Niehaus repeatedly encouraged defendant does not require acquittal for "entrapment is not available as a defense to a person who has the intent and design to commit a criminal offense, and who does commit the essential acts constituting it, merely because an officer of the law, for the purpose of securing evidence, affords such a person the opportunity to commit the criminal act, or purposely aids and encourages him in its perpetration." (*People v. McSmith* (1961), 23 Ill. 2d 87, 89.) Defendant points out that the State did not call its informant, Niehaus, to the stand or explain her absence; according to statements of defense counsel in the record, she apparently "fled to Kentucky." As a result, defendant argues that the evidence of inducement is uncontradicted and that his entrapment defense should therefore be accepted. This argument, however, overlooks any consideration of predisposition, a factor which must be considered when the entrapment defense is raised (*People v. Cross* (1979), 77 Ill. 2d 396, 405), and any inference which might arise against the State because of its unexplained failure to call the informer would be of little significance given the evidence of predisposition placed before the jury (*People v. Cross* (1979), 77 Ill. 2d 396, 406-07).

The judgment of the appellate court is reversed, and the cause is remanded to that court to allow it to address other issues raised by defendant but not decided by that

court because of its disposition of the case.

*Reversed and remanded,*
*with directions.*

MR. JUSTICE CLARK, dissenting:

The majority of this court has now upheld the conviction of a hapless adolescent with no prior history of drug abuse. His alleged crime was acting as an accessory to the sale of a white powder represented to be a controlled substance. For this crime, the defendant has received and must now serve a sentence of probation for two years, the last 60 days of which will be spent in jail.

I am not persuaded by the majority opinion that the State has proved the absence of entrapment beyond a reasonable doubt. Nor am I persuaded that the majority has promulgated the correct rule respecting the admission of subsequent-sales evidence in cases like this one. Therefore, I dissent.

Under our entrapment statute, the defendant has the burden of producing some evidence that he or she was entrapped. (See E. Cleary & M. Graham, Handbook of Illinois Evidence secs. 303.1-303.3, 404.4 (3d ed. 1979).) Upon the production of that evidence, the State must prove a lack of entrapment beyond a reasonable doubt. The crucial inquiry in disproving entrapment is whether the defendant was predisposed to commit the offense. Predisposition means an already-formed intent.

The defendant produced more than some evidence in this case that he was induced by Nancy Niehaus to commit the offense. Niehaus was a government informer for an undetermined period of time and had an undisclosed arrangement with the State. Defendant's only reason for committing the offense was as a favor to her. He had been dating her for three to four weeks. He had never before used, bought, sold or attempted to buy or sell drugs.

The State did not even suspect the defendant of being

a drug user before he became the subject of its investigative activity. During the relevant meetings, the defendant never used the slang vernacular for cocaine, something one would not expect from one predisposed to sell it. Several witnesses testified that they had known the defendant for substantial periods of time and that he was not predisposed to sell or use drugs. The State's own witness, Steven Jones, the supplier in this transaction, testified to the absence of defendant's predisposition prior to the State's inducement. One would think that if the defendant was predisposed to commit this offense, he would have had an agreement or at least some drug-related contact with the person who turned out to be the supplier for the transaction in issue. This, however, was not the case.

Despite this evidence, the majority concluded that the following facts were sufficient to warrant a jury verdict of guilty: "defendant's admission that the idea to contact Steve Jones originated with him; that defendant telephoned Jones two or three times during his initial meeting with Boyne [the testifying agent] ***; that defendant said that he had taken acid and that his brother is funny when he gets him high; that defendant arranged a second sale for Boyne one month after the September 3, 1975, sale; and that defendant arranged a third sale for someone other than Boyne sometime after the September 3, 1975, sale. In sum, the evidence indicated to the jury defendant's familiarity with drugs, his knowledge of a supplier, and his willingness to accommodate those desirous of obtaining drugs." (78 Ill. 2d at 487-88.) I have three major points to make about this summary of the evidence. First, the facts of the initial meeting between agent Boyne and the defendant are of less importance than the prior conduct of the State's informer. On that issue, defendant's unrebutted testimony is that she induced him to attempt to facilitate her procurement of cocaine. Second, the statement about defendant's and his brother's experi-

mentation with drugs is uncorroborated and is an unreliable basis for upholding his conviction. Third, the alleged subsequent sales are irrelevant to the defendant's predisposition, which is the crucial issue in this appeal.

The initial meeting of the defendant with agent Boyne was preceded by the efforts of the illusive informer for the State, Nancy Niehaus, to persuade the defendant to provide her with cocaine. He did not solicit her. She solicited him. Agent Boyne testified that he did not know the arrangements that were made between the State and Niehaus. He did not know her before this transaction was begun. She was unavailable at the time of the trial; she apparently had fled to Kentucky.

Niehaus had dated the defendant for three to four weeks prior to this incident. They had not been dating for two weeks prior to the date of the offense. During this time, Niehaus made several requests of the defendant to obtain cocaine. Agent Boyne would not have made contact with the defendant without these prior efforts and he testified to this effect. Then, after the meeting with Boyne and Niehaus, the defendant received a series of phone calls from them both. The requests for cocaine were repeated with a badgering frequency. Only then did the defendant commit the offense.

Upon all of these facts being produced by the defendant, the State had the burden of proving a lack of entrapment beyond a reasonable doubt. The majority in this case has taken the novel position that this burden does not include the burden of producing Nancy Niehaus' testimony, despite her knowledge of the relevant circumstances.

The effect of a failure to produce such an important witness used to be clear in this State. In *People v. Dollen* (1972), 53 Ill. 2d 280, a defendant with no prior history of involvement in narcotics innocently gained possession of them from a vehicle he was inspecting. A police informer who had an opportunity and a motive to place

narcotics in the vehicle immediately suggested their sale. The court stated:

"We do not imply that any law-enforcement official was involved in a plan to place narcotics in the vehicle, but we believe that the totality of the evidence was sufficient to indicate that Wright [the informer], acting independently, may have deposited the package so as to result in its detection by defendant, thus establishing the possibility of entrapment. The State, for example, may have easily rebutted defense testimony concerning the manner in which the drugs were found or the inference of their possible source by calling the informer to testify. However, it chose not to, explaining that Wright had disappeared, and simply relied upon the testimony of police officials which primarily related to the actual sale." (53 Ill. 2d 280, 284-85.)

Mainly for these reasons, the court held that the State had not sustained its burden of proof on the entrapment issue. The import of *Dollen* is not confined, nor should it be confined, to its precise, never-to-be-repeated facts; the point in *Dollen* was that the defendant had produced evidence of entrapment which required rebuttal by the State. In *Dollen* this burden included that of producing the informer's testimony about salient issues. A similar situation was presented in the case at bar, and this case, like *Dollen,* found the State relying primarily on testimony relating to the actual sale.

The majority here failed to even discuss *Dollen* on this issue, stating merely that other evidence of predisposition made Niehaus' testimony unimportant. As we have seen, however, there is also evidence of entrapment. The conflict engendered between the evidence of entrapment and the allegations of predisposition could be resolved most accurately after hearing from Niehaus, an inquiry the majority terms unnecessary. This result far

extends the holding in *People v. Cross* (1979), 77 Ill. 2d 396, 406-07, where the defendant admitted his predisposition. No prior case has gone this far in permitting the State to shirk its burden of producing relevant evidence.

The foregoing is not a mere academic inquiry. The trial judge, during arguments on the post-trial motion, stated:

"[T]he point that gives me cause for concern, and the point that has given me cause for concern from the very inception of this case, and I think I expressed that to both of you [the attorneys] at the time, *** I think at least this case borders on entrapment. That's the issue that concerns me ***."

After argument from defense counsel, he stated that the State's failure to produce Niehaus was unimportant and then stated:

"Admittedly, I think it's a very close case. If I, personally, would have been sitting on the jury, I might have found that there was entrapment, but *** [t]he issue before the Court is whether or not this is a jury question ***."

Thus, the trial judge felt that the issue was close even without drawing the inference against the State that is required by *Dollen*. He based his decision on the other evidence produced at trial.

I do not think this other evidence should be ignored either. But the State and the majority opinion have relied heavily upon the defendant's actions during his first meeting with agent Boyne: his attempted telephone calls to Jones and his apparent willingness to facilitate a sale. In a normal case, a willingness or eagerness to facilitate a drug transaction is probative of predisposition. The State's failure to produce testimony of the informer, however, after the exculpatory evidence produced by the defendant in this case, prevents me from giving these actions much weight because the more relevant activity took place before that meeting. As to that activity, we only have the uncontradicted exculpatory testimony of the defendant.

494

The majority, however, argues that the defendant's familiarity with drugs is demonstrated by his quoted statement that he had taken acid and that he had given drugs to his little brother. The defendant admitted making the statement but denied that it was true. The situation is akin to those cases where uncorroborated admissions or confessions form the sole basis of proof of an element of crime. In those circumstances, an unbroken line of cases have held that admissions or confessions require corroborative evidence before they are considered sufficient to support a conviction. (See *Wong Sun v. United States* (1963), 371 U.S. 471, 488-90, 9 L. Ed. 2d 441, 456-57, 83 S. Ct. 407, 417-19; *People v. LaCoco* (1950), 406 Ill. 303, *cert. denied* (1951), 340 U.S. 918, 95 L. Ed. 663, 71 S. Ct. 348; *People v. Rogers* (1953), 415 Ill. 343; *People v. Lueder* (1954), 3 Ill. 2d 487; *People v. O'Neil* (1960), 18 Ill. 2d 461, 464; *People v. Norcutt* (1970), 44 Ill. 2d 256, 263; *People v. Taylor* (1974), 58 Ill. 2d 69, 78.) These cases recognize that people say things, when they are outside of court and not under oath or subject to cross-examination, that they do not mean (*People v. O'Neil* (1960), 18 Ill. 2d 461, 464.) Consequently, they are inadequate alone as proof that the crime or the element thereof was committed. In this case, there is no evidence that the defendant used drugs or gave them to his brother. By analogy, this statement alone, though admissible, is insufficient to establish the defendant's predisposition.

We have seen, then, that although it was defendant's idea to contact Steve Jones and that he attempted to contact him during the initial meeting with agent Boyne, defendant produced evidence that he did so only as a result of the importunings of his former date and government informer, Nancy Niehaus. We have also seen that the State's failure to produce her in rebuttal should require an inference to be drawn against the State, at least on the question of defendant's readiness and eager-

ness to commit the crime. Finally, we have seen that the defendant's statement regarding taking acid and getting his brother high lack crucial indications of reliability.

The only remaining evidence to be considered, then, is that relating to the alleged subsequent sales or attempted sales. I do not think such actions constitute evidence from which defendant's predisposition could be proved. Nor do I think they should have been admitted in this case.

Predisposition means an already formed intent to commit the offense charged. Thus, the seminal entrapment case, *Sorrells v. United States* (1932), 287 U.S. 435, 442, 77 L. Ed. 413, 417, 53 S. Ct. 210, 213, stated the test to be whether the intent to commit the crime originated with the government or with the defendant. Illinois has adopted this test. (See Ill. Rev. Stat. 1975, ch. 38, par. 7—12, and Ill. Ann. Stat., ch. 38, par. 7—12, Committee Comments, at 436-37 (Smith-Hurd 1972).) Logically, the fact of subsequent sales alone has no relevance as to how the intent was acquired, where the intent originated or whether the intent was formed prior to the commission of the offense.

In an appropriate case, evidence of subsequent sales would be admissible. Thus, if the defendant denied having knowledge that the substance transferred was represented to be a controlled substance, a subsequent sale would be admissible to rebut this contention. If the defendant testified that the transfer was accidental, subsequent sales would be admissible. Other instances when the defendant's intent would be in issue are easily imaginable. In this case, the crime charged was one of general intent. The intent can be inferred from the act itself. As I read the record, the defendant admitted his participation in the act and did not claim a lack of intent or knowledge on the day in question.

In a normal case, the defendant faces a Hobson's

choice if there is evidence of subsequent sales and the defense of entrapment is raised. If a defendant pleads entrapment and denies the intent to commit the offense, subsequent sales are admitted as probative of intent on the date of the offense. And, usually, there is sufficient evidence to justify a jury verdict of predisposition so that even if subsequent-sales evidence had a prejudicial impact, entrapment cannot be held proved as a matter of law. In this case, however, it was appropriate for the trial judge to weigh the probative value of evidence against its probable prejudicial impact. (See E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 404.5 at 136 (3d ed. 1979); *People v. Cage* (1966), 34 Ill. 2d 530, 534.) In the case at bar, it was likely that the jury would consider evidence of the subsequent sales as bearing on the issue of predisposition. That they would do so is not surprising, considering that the majority here made this same mistake. Thus, it was likely to have a prejudicial impact. Balanced against this is the small probative value of the evidence. It was only relevant to show defendant's intent on the day of the offense, an issue that was not seriously in dispute. Consequently, it should not have been admitted and was likely to prejudice the defendant. However, it is important to note that even if it were admissible (if defendant's intent on the day in question was in issue), it is still not probative of defendant's predisposition and cannot be considered competent evidence on which to rebut defendant's claim of entrapment.

The majority argues that the defendant opened the way to the admission of this evidence by pleading the defense of entrapment. I do not think, however, that by pleading a lawful defense a defendant forfeits his right to have the case against him proved with relevant evidence. Further, it is not necessarily the defendant who has brought on the "searching inquiry" into his own conduct. If the State's informer entrapped him, it is the State which has brought on the defendant's crime in the first place

and then is in the position of seeking to compound his problems by arguing for the admissibility of irrelevant evidence. A more unjust result is difficult to conceive.

The majority also argues that the admission of this evidence is warranted in light of the case law of other jurisdictions. The list of cases cited by the majority in support of their position loses its luster, however, when they are examined more closely and when the position of other jurisdictions is studied. Thus, in *United States v. Rodriguez* (5th Cir. 1973), 474 F.2d 587, subsequent-sales evidence was not allowed as part of the prosecution's case-in-chief. It was only allowed in rebuttal to the testimony of the defendant. Moreover, there was no evidence in that case that the government agent implanted the scheme in the defendant's mind, and there was persuasive evidence that the defendant was a dealer in considerable quantities. To borrow a phrase from Mr. Justice Rehnquist, the case at bar is distinctly not of that breed.

In *United States v. Santore* (E.D. Pa. 1958), 164 F. Supp. 362, 366, the trial judge made it clear to the jury that the subsequent sales were only relevant to defendant's state of mind on the date of the incident. This case, instead of supporting the majority opinion, supports my contention that subsequent sales are not probative of predisposition and, if admissible, are only admissible as bearing on the defendant's intent on the day that the offense was committed. *Aller v. State* (1974), 61 Wis. 2d 740, 741, 214 N.W.2d 431, 432, also cited by the majority, is only a one-paragraph opinion restating the holding in *State v. Monsoor* (1973), 56 Wis. 2d 689, 703, 203 N.W.2d 20, 27. In that case, a large cache of marijuana was found in defendant's basement after the sale for which he was on trial occurred. Although not pointed out by that court, this type of evidence is different from a subsequent sale. It may be probative of predisposition since the inference could be drawn that the contraband was procured before the date of the

incident in question. No comparable inference can be drawn in this case. In *People v. Calvano* (1972), 30 N.Y.2d 199, 206, 282 N.E.2d 323, 326, 331 N.Y.S.2d 430, 436. evidence of a sale occurring between two incidents was allowed as part of a continuing chain of events. No similar contention was made here. The last case cited, *United States v. Smith* (2d Cir. 1960), 283 F.2d 760, 762-64, involved a prior sale that might indeed be relevant to show predisposition. Subsequent sales are not.

It was also misleading to suggest that these cases represent an overwhelming majority of jurisdictions. Many jurisdictions have not been faced with this question. Many other jurisdictions, recognizing evidentiary and other hazards present in cases like this one, do not even permit a jury inquiry into the predisposition of the defendant. Instead, when an entrapment defense is raised, the trial judge determines as a matter of law whether the conduct of the government and its agents was such as to induce an ordinary law-abiding citizen to commit the offense. (See *State v. Mullen* (Iowa 1974), 216 N.W.2d 375; *State v. Sainz* (1972), 84 N.M. 259, 501 P.2d 1247; *Grossman v. State* (Alas. 1969), 457 P.2d 226; *People v. Barraza* (1979), 23 Cal. 3d 675, 153 Cal. Rptr. 459, 591 P.2d 947; *People v. D'Angelo* (1977), 401 Mich. 167, 257 N.W.2d 655; N.D. Cent. Code sec. 12.1–05–11 (1976); N.H. Rev. Stat. Ann. sec. 626:5 (1974); Pa. Cons. Stat. Ann., tit. 18, sec. 313 (Purdon 1973); Haw. Rev. Stat. sec. 702–237 (1976).) I have neither the space nor the inclination to offer a full-fledged analysis of the so-called objective test here. But it is important to note that evidentiary problems like the one encountered in this case are a cause of great concern in many jurisdictions and varying remedies have been suggested to prevent the prejudice to defendants like that involved in the instant case. Indiana, for example, requires law-enforcement officials to have some reason to suspect defendants before they can attempt to ensnare them.

(*Smith v. State* (1972), 258 Ind. 415, 281 N.E.2d 803.) A similar holding in Illinois would have prevented the prosecution of this defendant because the State admittedly had no basis for suspecting him and did not in fact suspect him before asking him to procure controlled substances.

I have concluded that there was no competent evidence of predisposition and that, therefore, the State failed to carry its burden of proof on the entrapment issue. I have also concluded that evidence of subsequent sales should not have been admitted in this one particular case. Hence, defendant's conviction should have been overturned in accordance with the appellate court's decision.

In *Sherman v. United States* (1958), 356 U.S. 369, 384, 2 L. Ed. 2d 848, 858, 78 S. Ct. 819, 826, Mr. Justice Frankfurter, concurring, wrote that "Human nature is weak enough and sufficiently beset by temptations without government adding to them and generating crime." In this case, the appellate court did not just look at the probation officer's report in considering whether the defendant was entrapped. The record fairly shows an overweight, 17-year-old high school sophomore who was lured by the prospect of feminine companionship into ineptly committing a crime. He was initially reluctant to commit it and had no prior history of similar offenses. I think the State added to his problems and generated a crime.

The defendant received a sentence of two years' probation with 60 days to be spent in jail. He never handled the money or the white powder. The person who did receive the money and handle the white powder and who was known to be "into" drugs pleaded guilty and received a sentence of only one year of probation with nine weeks to be spent in jail, plus a $500 fine.

I have no doubt that it is necessary for the government to engage in practices that would not be countenanced absent the alarming drug problem. Illicit drug organiza-

tions are well-financed, well-advised, sophisticated and dangerous to our society. But this case illustrates a pattern of law enforcement that is not likely to result in the defeat of these organizations and this problem in our time.