**STATE of Missouri, Plaintiff-Respondent,**

v.

**Johnny Lee SCHOENHALS, Defendant-Appellant.**

**No. 14408.**

Missouri Court of Appeals, Southern District, Division Two.

Sept. 4, 1986.

Lew Kollias, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

The information charged that defendant, in violation of § 195.020,[1] on May 24, 1984, in Newton County, sold marijuana to T.G. Mills. After a non-jury trial the trial court found defendant guilty and imposed a sentence of five years. Defendant appeals.

Defendant's sole point is that the evidence is insufficient to support the finding of guilty "in that defendant produced substantial evidence of entrapment by repeated pressure from state agents to procure marijuana for them and the state failed to prove lack of entrapment beyond a reasonable doubt, in that evidence of defendant's participation in *subsequent* transactions did not show a previous disposition to engage in illicit drug sale *prior* to the charged offense." (Emphasis added.)

The state's only witness, during the presentation of its case-in-chief, was T.G. Mills, a highway patrolman who was working undercover. Mills testified that on May 23, 1984, he met defendant in Seneca. The meeting had been arranged by Glenn Smith, an informant paid by the state. Smith was a friend and former schoolmate of defendant.

At the Seneca meeting Mills gave defendant $270 to obtain a quarter pound of marijuana. Defendant told Mills that his "contact" was Ron Durbin who lived in Oklahoma. During the early hours of May 24

---

1. All references to statutes are to RSMo 1978, V.A.M.S.

defendant, who had procured the marijuana in Oklahoma, delivered it to Mills. Mills gave defendant a small amount of the marijuana for his own use. Such was the state's case-in-chief.

Defendant, testifying in his own behalf, admitted delivering the marijuana to Mills and receiving $270. Defendant testified that he paid Durbin $265 for the marijuana and that the extra $5 was for defendant's travel expenses.

Defendant testified that informant Smith "all the time would ask me to sell drugs to Mills and bother me at work.... Smith did this a half dozen or a couple of dozen times at least." Defendant also said, "Mills asked me to sell him drugs half a dozen times and I turned him down half a dozen times or more and said I couldn't get it, I didn't have time, and I had more important things to do."

Defendant also said that on May 23, 1984, "I decided to get marijuana for Mills after consistently refusing to get him any because Mills kept coming to my job and I figured I would get it and he would leave me alone."

On cross-examination the defendant testified that although he used marijuana occasionally he did not sell it. Defendant admitted that on June 9, 1984, he participated in a $970 sale of marijuana by Durbin to Mills in Miami. Defendant also admitted that on July 1, 1984, he participated in the sale, for $1,650, of two pounds of marijuana by Durbin to trooper M.H. Poe, who was working undercover with Mills. Defendant could not recall whether on July 13, 1984, he "worked with" Mills in attempting to set up a sale of one pound of marijuana to people named Engles.

After the defense rested, the state produced Trooper Poe who testified about the June 9 and July 1 sales. Trooper Mills, recalled by the state as a rebuttal witness, also testified to defendant's involvement in the June 9 and July 1 sales.

Defendant then produced Archie Burlison, who testified that on one occasion, date uncertain but "after May—after school, 1984," he overheard a conversation between Mills and defendant in which Mills asked defendant to "get him a quarter pound of smoke [marijuana]" and defendant said, "I've got better things to do." The witness further testified that Mills kept talking to defendant, "trying to talk him into it," and defendant said, "I've got plans today."

Referring to the June 9, July 1 and July 13 transactions, defendant's brief says:

"If these subsequent sales are held permissible evidence of a predisposition to engage in a prior sale, then the state may have displayed defendant's predisposition to commit the offense. However, defendant submits the relevant analysis is predisposition *prior* to the charged offense, and while defendant may have admitted to being an occasional user of drugs, he never sold previous to the charged offense, and only did so on that occasion to be relieved of the alleged badgering of Smith and Mills."

The state's brief does not address defendant's contention that evidence of defendant's participation in the June 9, July 1, and July 13 transactions has no probative value with respect to defendant's predisposition to commit the May 24 offense for which he was on trial. Citing *State v. Willis*, 662 S.W.2d 252 (Mo. banc 1983), the state argues that there was no evidence of entrapment in "the State's case" and that the trial judge "as trier of facts was free to disbelieve the defendant's evidence of unlawful entrapment." Judge Henry stated, at the close of the evidence, "The court is of the opinion that the testimony does not show an entrapment of the defendant."

Section 562.066 reads, in pertinent part:

"1. The commission of acts which would otherwise constitute an offense is not criminal if the actor engaged in the prescribed conduct because he was entrapped by a law enforcement officer or a person acting in cooperation with such an officer.

2. An 'entrapment' is perpetrated if a law enforcement officer or a person acting in cooperation with such an officer,

for the purpose of obtaining evidence of the commission of an offense, solicits, encourages or otherwise induces another person to engage in conduct when he was not ready and willing to engage in such conduct.

. . . . .

4. The defendant shall have the burden of injecting the issue of entrapment."

Section 556.051 reads:

"When the phrase 'The defendant shall have the burden of injecting the issue' is used in the code, it means

(1) The issue referred to is not submitted to the trier of fact unless supported by evidence; and

(2) If the issue is submitted to the trier of fact any reasonable doubt on the issue requires a finding for the defendant on that issue."

In *Willis* defendant was convicted, in a non-jury case, of selling cocaine. On appeal defendant claimed that the evidence was insufficient as a matter of law to support the conviction for the reason that she had presented evidence of entrapment which the state had not contradicted. In upholding the conviction the supreme court noted that Missouri follows the "subjective" test on entrapment, which focuses on the origin of the intent to commit the crime with emphasis on the predisposition of the accused.

The court said that § 562.066.2, set forth above, codified the defense of entrapment which was originally "a judge created doctrine."

"[I]t is the defendant's initial burden to go forward with evidence showing both unlawful governmental inducement and defendant's lack of predisposition. The State then has the burden of proving lack of entrapment beyond a reasonable doubt. The State may do so by rebutting either defendant's evidence of inducement or showing his predisposition."

*State v. Willis,* supra, 662 S.W.2d at 255.

"Defendant's uncontradicted evidence of unlawful inducement by Leslie may be sufficient to raise a factual issue for the trier of fact but it does not follow that absent contrary evidence by the State, she has established entrapment as a matter of law because the jury, or the court in a jury-removed case, may disbelieve her evidence."

Id. at 255–256.

"[T]he prosecution is not required to present evidence of a defendant's predisposition to commit an offense where the only evidence of entrapment is supplied by the defendant's uncontradicted testimony.

. . . . .

This principle also applies where the defendant's entrapment defense is corroborated by other defense witnesses, since the jury may disbelieve any or all of his witnesses."

Id. at 256.

"We conclude that once the issue of entrapment has been injected into the case by the defendant and the State's case contains no evidence of entrapment, entrapment is not established as a matter of law and the fact finder is free to reject the defendant's allegations and conclude he was not unlawfully entrapped."

Id. at 257.

In the case at bar the state's case-in-chief contained no evidence of entrapment and the issue of entrapment was injected into the case by defendant. Thereafter, in rebuttal, the state introduced evidence which was unfavorable to the defendant on the entrapment issue. This court agrees with the state that, under *Willis,* Judge Henry was free to reject defendant's testimony, including that of defense witness Burlison, and conclude that defendant was not entrapped.

There apparently is no Missouri decision addressing defendant's specific contention. In other settings Missouri has recognized the principle that "The fact, standing alone, that the challenged evidence was of a crime committed after, rather than before, the crime on trial, does not necessarily make that evidence incompetent. *State v. Shaw,*

636 S.W.2d 667, 672[7] (Mo. banc 1982)." *State v. Morton,* 684 S.W.2d 601, 610 (Mo. App.1985).

Moreover, there is overwhelming federal and out-state authority holding that when the defense is entrapment, the state may introduce, on the issue of predisposition, evidence of an offense committed subsequent to the one on trial, at least if the subsequent offense is similar in nature and reasonably proximate. *United States v. Mack,* 643 F.2d 1119 (5th Cir.1981); *United States v. Rodriquez,* 474 F.2d 587 (5th Cir. 1973); *United States v. Moschiano,* 695 F.2d 236 (7th Cir.1982); *United States v. Santore,* 164 F.Supp. 362 (E.D.Pa.1958); *People v. Tipton,* 78 Ill.2d 477, 36 Ill.Dec. 687, 401 N.E.2d 528 (1980); *Berlin v. State,* 12 Md.App. 48, 277 A.2d 468 (1971); *State v. Lynard,* 294 N.W.2d 322 (Minn. 1980); *State v. Dancy,* 43 N.C.App. 208, 258 S.E.2d 494 (1979); *State v. Talbot, III,* 135 N.J.Super. 500, 343 A.2d 777 (1975); *People v. Calvano,* 30 N.Y.2d 199, 331 N.Y. S.2d 199, 282 N.E.2d 322 (1972); *State v. Elendt,* 654 S.W.2d 411 (Tenn.Cr.App. 1983); *Aller v. State,* 214 N.W.2d 431 (Wis. 1974); *State v. Monsoor,* 56 Wis.2d 689, 203 N.W.2d 20 (1973). See 2 Weinstein's Evidence, U.S. Rules, § 404[04], p. 404–31; 61 A.L.R.3d 293 (Admissibility of Evidence of Other Offenses in Rebuttal of Defense of Entrapment), § 7[c] at 319, et seq.

In *People v. Tipton,* supra, 36 Ill.Dec. 691, 401 N.E.2d at 532, the court said:

> "[E]vidence of subsequent acts is admissible if relevant to the issue of predisposition of the defendant to commit the offense charged; relevancy is measured in terms of similarity and proximity in time."

In *United States v. Moschiano,* supra, the court said, at 244:

> "While it is true that predisposition turns on a defendant's mental state prior to commission of the crime, that mental state may be proved by relevant and admissible evidence concerning the defendant's actions either before or after commission of the crime.

> ... [S]ubsequent similar acts may, under proper circumstances, be admissible to prove the defendant's predisposition to commit the crime charged. Although less probative on this issue than prior similar acts, ... the commission of similar crimes after the indicted offense does have a tendency to make it more probable that the defendant was predisposed to commit the offense charged." (Citing authorities.)

The judgment is affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.