(No. 84-CC-1118–)

DAVID A. WEDEMEYER, Claimant, v.
THE STATE OF ILLINOIS, Respondent.

*Order filed March 19, 1991.*

*Opinion filed June 2, 1993.*

WIMMER, STIEHL & MONTALVO, P.C., for Claimant.

ROLAND W. BURRIS, Attorney General (PATRICIA L. HAYES, Assistant Attorney General, of counsel), for Respondent.

## ORDER

BURKE, J.

Claimant, David A. Wedemeyer, filed his two-count amended complaint in the Court of Claims on February 27, 1985. Count I alleges that the State of Illinois breached a contract with the Claimant through the "Illinois Lottery." Count II alleges fraud on the part of the State of Illinois.

The case was tried and reviewed before a commissioner of the Court of Claims. The Court being fully advised in the premises finds the following:

The Facts: Claimant participated in the Illinois State Lottery's Fantasy Game in June and July of 1983. The Fantasy Game involved the purchase of tickets with nine game squares covered with a removable silver coating. The purchaser of the ticket was to rub the

coating off each of the nine game squares. If the purchaser's ticket displayed three matching symbols in a row, once the silver coating was removed, he would be entitled to receive the prize indicated on the face of the ticket. The price of the tickets was $1.00. The game player could receive prizes ranging in value from a free $1 ticket to $100,000. Winners of certain prizes were also entered in a grand prize drawing for a $1,000,000 prize.

Claimant purchased tickets in the Fantasy Game in June and early July at the rate of approximately one per week. The Claimant testified that, on July 11, 1983, he was informed by Mrs. Smith of Smith Package Liquor that there were only two $100,000 winning tickets remaining unsold. Smith stated that most of the previous tickets had been distributed in the Chicago area and that those tickets were sold out. Smith stated that to her belief there was a good possibility that the Claimant might win a $100,000 ticket. Claimant testified that he had seen various brochures and advertisements published by the State of Illinois which placed the odds of randomly purchasing a $100,000 winner at 5,520,000 to one. Based upon the representations of Mrs. Smith that the odds of purchasing a winning ticket were increased, Claimant, by means unexplained, calculated his odds of purchasing a $100,000 winner at one in 7000. The Claimant testified that neither Mrs. Smith nor anyone else told him how many tickets remained unsold. The Claimant also testified that he never noticed any information concerning the number of tickets available upon the screen of the lottery computer at Smith Package Liquor.

Based upon Claimant's recalculation of the actuarial tables, Claimant decided to purchase every ticket

available at Smith Package Liquor. Over the next several days the Claimant purchased, with cash, 4,850 Fantasy Game tickets. Claimant was purchasing tickets at the rate of 250 to 300 per day.

Count I alleges that the State of Illinois, through the "Illinois Lottery," offered to Claimant an opportunity to win a $100,000 grand prize in its Fantasy Game in exchange for his purchase of lottery tickets. Despite the fact that the last drawing for said Fantasy Game was held on or about July 8, 1983, it thereafter continued to advertise said Fantasy Game and continued to sell and authorize for sale tickets bearing the slogan, "Win $100,000 instantly." Claimant in Count I alleges that he suffered damages in the amount of $3,850 which is the sum of money spent on lottery tickets following the awarding of the last $100,000 grand prize. Count II alleges fraud on the part of the State of Illinois, in that agents, servants and employees of the Respondent made untrue representations to the Claimant, Claimant justifiably relied on said statements, said statements were made for the purpose and intent of inducing the Claimant to purchase tickets for the game, and he justifiably relied on said misrepresentations, to his detriment.

The Law: Respondent adequately addresses Claimant's argument that fraud was perpetrated by the officer or agent of the State. The law is quite clear that when a State officer performs illegally and under authority which he does not have, the action lies against the officer and not against the State of Illinois. *Sass v. Kramer* (1978), 78 Ill. 2d 485, 381 N.E.2d 975; *Smith v. Jones* (1986), 113 Ill. 2d 126.

On the question of agency in general, this Court

has held that the doctrine of apparent authority does not apply to the State of Illinois, and an agent without authority cannot bind the State of Illinois. (*Ernat v. State* (1984), 36 Ill. Ct. Cl. 82, 90; *Bellini v. State* (1982), 35 Ill. Ct. Cl. 701, 703.) It is clear from the transcript that there is no evidence or testimony of any misrepresentation by the State of Illinois, and if, in fact, any "puffing" for the purpose of inducing a sale was made, it was done by the selling agent without specific or apparent authority to so act. Thus, it is clear that Claimant has failed to provide the existence of an agency relationship so as to bind the State of Illinois.

Thus, it is hereby ordered that the Claimant's claim be denied.

## OPINION

BURKE, J.

This claim is based upon a two-count complaint: Count I alleges that the State of Illinois, through the "Illinois Lottery," offered to Claimant, in exchange for his purchase of lottery tickets, an opportunity to win a $100,000 grand prize in its Fantasy Game despite the fact that the last drawing for said Fantasy Game was held on or about July 8, 1983. Thereafter, the Illinois lottery continued to advertise said Fantasy Game and to sell and authorize the sale of tickets bearing "Win $100,000.00 instantly." Claimant alleges that he suffered damages in the amount of $3,850 which is the sum of the money spent on lottery tickets following the awarding of the last $100,000 grand prize.

Count II alleges fraud on the part of the State of Illinois, in that their agents, servants and employees made untrue representations to the Claimant, Claimant

justifiably relied upon said statements, said statements were made for the purpose and intent of inducing the Claimant to purchase tickets for the game, and he justifiably relied on said misrepresentations to his detriment.

In June and July of 1983, Claimant participated in the Illinois State Lottery's Fantasy Game. The Fantasy Game involved the purchase of tickets with nine game squares covered with a removable silver coating. The purchaser of the ticket was to rub the coating off each of the nine game squares. If the purchaser's ticket displayed three matching symbols in a row once the silver coating was removed, he would be entitled to receive the prize indicated on the face of the ticket. The price of the tickets was $1.00 each. The game player could receive prizes ranging in value from a free $1 ticket to $100,000. Winners of certain prizes were also entered in a grand prize drawing for $1,000,000.

Claimant purchased tickets in the Fantasy Game in June and early July at the rate of approximately one per week. On July 11, 1983, Mrs. Smith of Smith Package Liquor told Claimant that there were two $100,000 winning tickets remaining unsold. Mrs. Smith stated that most of the previous tickets were distributed in the Chicago area and that those tickets were sold out and that to her belief, there was a good possibility that the Claimant might win a $100,000 ticket. Claimant testified that he had seen various brochures and advertisements published by the State of Illinois which placed the odds of randomly purchasing a $100,000 winner at 5,520,000 to one; however, based upon the representations of Mrs. Smith, the odds of purchasing a winning ticket were increased. Claimant, by means unexplained, calculated his odds

of purchasing a $100,000 winner at one in 7000. Neither Mrs. Smith nor anyone else told Claimant how many tickets remained unsold and he never saw any information concerning the number of tickets available upon the screen of the lottery computer at Smith Package Liquor. Claimant became determined to purchase every ticket available at Smith Package Liquor. Over the next several days the Claimant purchased 3,850 Fantasy Game tickets, at the rate of 250 to 300 per day.

When fraud is perpetrated by an officer or agent of the State and said officer or agent performs illegally and under authority which he does not have, the action lies against the officer and not against the State of Illinois. (*Sass v. Kramer* (1978), 78 Ill. 2d 485, 381 N.E.2d 975; *Smith v. Jones* (1986), 113 Ill. 2d 126.) This Court has held that the doctrine of apparent authority does not apply to the State of Illinois, and an agent without authority can not bind the State of Illinois. (*Ernat v. State* (1984), 36 Ill. Ct. Cl. 82, 90; *Bellini v. State* (1982), 35 Ill. Ct. Cl. 701, 703.) It is clear that there is no evidence or testimony of any misrepresentation by the State of Illinois, and if, in fact, any "puffing" for the purpose of inducing a sale was made, it was done by the selling agent without specific or apparent authority to so act. It is, therefore, clear that Claimant failed to prove the existence of an agency relationship so as to bind the State of Illinois. Additionally, the Claimant continued to purchase lottery tickets with an opportunity to win other prizes although the large prize category may have been fully claimed. To find a breach of contract on the part of the State because of the depletion of one prize category would, in effect, defeat the intended purpose of the lottery game.

That Claimant may have relied unreasonably upon the statements of a person not authorized to speak for the State is insufficient to support a cause of action against the State of Illinois.

It is hereby ordered that this claim is denied.