THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN GANNON, Defendant-Appellant.

First District (1st Division)   No. 1—88—2748

Opinion filed May 6, 1991.

Randolph N. Stone, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William Pistorius, and Jack Wilk, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Following a jury trial, defendant John Gannon was convicted of delivery of a controlled substance and possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1987, ch. 56½, pars. 1401(a)(2), (b)(2)) and was sentenced to 12 years' imprisonment. Defendant appeals his convictions and the prison term imposed.

We affirm.

Defendant's convictions arise out of a transaction to sell cocaine in which Clem E. Ferguson, a State Police special agent, posed as purchaser.

On the morning of January 7, 1988, defendant contacted Ferguson, who was using the alias "Deacon," from a restaurant located on Pershing Road in Chicago. Defendant informed Ferguson that he could obtain, through his source, two kilograms of cocaine for sale. Later that afternoon, Ferguson, accompanied by James Kizart, his partner, and Andre Kellem, an agent with the Drug Enforcement Administration, met defendant and Clayborn Burse in the restaurant's parking lot to complete the transaction. Defendant retrieved a white plastic bag from under the hood of Burse's automobile. After Ferguson opened one of two wrapped packages in the white plastic bag and observed a white powdery substance, defendant and Burse were arrested.

In total, the police recovered 2,015.4 grams of cocaine from the wrapped packages and 5.0 grams of cocaine from a small plastic bag found in defendant's jacket pocket.

At trial, defendant asserted an entrapment defense and sought to establish that he was induced to participate in the transaction by a police informant named Greg and by Ferguson. Defendant testified he owned and operated a catering truck and had met Greg in July 1987 at Spears Transportation (Spears), one of defendant's stops, where Greg was a security guard. Greg had inquired whether it was true that truck caterers sold drugs, explaining that his cousin, who was named Deacon, would be interested if so. Defendant told Greg that he did not engage in such activity.

Greg also told defendant that a woman named Stella, which later testimony showed to be Clayborn Burse's niece, also worked at Spears and could obtain cocaine. On two occasions, Greg had asked defendant to approach Stella on Greg's behalf, explaining he could not do so directly because Stella did not like him. Defendant had declined.

Eventually, Greg was fired from Spears. However, around the month of September, defendant stated, he saw Greg again. At that time, defendant was experiencing mechanical trouble with his truck. Greg told defendant he had a way for defendant to make money quickly by obtaining cocaine. Subsequently, defendant agreed to approach Stella.

Defendant met with Stella on December 22, 1987, and she arranged to have defendant meet Burse. Defendant spoke with Burse that day about obtaining cocaine for Deacon. The next day, defendant met Ferguson at Spears after contacting him through a telephone number, which Greg had supplied.

Between December 27, 1987, and January 7, 1988, defendant stated he was contacted by both Greg and Ferguson. Ferguson had telephoned him at home four times. He personally talked to Ferguson twice. The conversations concerned Ferguson's desire to have defendant obtain two kilograms of cocaine. Defendant told him he was not interested.

Defendant also testified he contacted Greg on December 27, 1987, and January 2, 1988, to tell him that he did not want to be involved in the transaction. However, Greg had indicated it was too late for defendant to back out.

Defendant stated that shortly after his arrest on January 7, 1988, he witnessed a conversation about Greg between Ferguson and another officer, apparently referring to Kizart. Defendant asked Ferguson why he did not arrest Greg. Ferguson stated that he could not because Greg worked for the police.

Defendant admitted that when he met Ferguson on December 23, 1987, he had also sold Ferguson an eighth of an ounce of cocaine, which he had obtained from Burse. Defendant explained that he had arranged a meeting with Ferguson and Burse for that day, but when Ferguson failed to twice meet Burse at appointed times, Burse gave the cocaine to defendant to deliver.

Defendant stated he contacted Ferguson again on the following day and offered to sell him another similar quantity of cocaine. Ferguson then asked whether defendant could obtain larger quantities of cocaine.

On or about December 29 or 30, 1987, defendant testified, he contacted Ferguson to tell him he was no longer interested in being involved with further narcotics transactions. However, he also admitted contacting Ferguson to arrange the January 7, 1988, transaction.

Defendant's two sons, aged 10 and 12, also testified in support of his defense. Their testimony established that, sometime between the Christmas and New Year holidays preceding defendant's arrest, they each answered two telephone calls at their home from a man named Deacon, who asked to speak to their father.

It was Ferguson's testimony that between December 23, 1987, and January 7, 1988, defendant had contacted him twice. Ferguson had also telephoned defendant's home once in that period. Defendant was not then home, and Ferguson spoke, first, with a child, and then with a female.

In testimony during the State's case in rebuttal, Ferguson stated that, on December 22, 1987, he had spoken with an informant concerning defendant. The informant's name was not Greg. In fact, the informant was a female. Pursuant to that conversation, the next day, Ferguson and Kizart went to Spears and met defendant, who was expecting them. Defendant advised them that he did not have the cocaine they wanted at that time. Defendant and Ferguson exchanged telephone numbers. Later that day, Ferguson and Kizart returned and purchased an eighth of an ounce of cocaine from defendant. Ferguson inquired about purchasing larger quantities of cocaine and defendant replied that he could provide larger amounts. Ferguson told defendant to telephone him when he obtained more.

On or about December 27, 1987, defendant contacted Ferguson, stating he was still looking for his source. Defendant asked if Ferguson was interested in purchasing another eighth of an ounce of cocaine, but Ferguson declined, again instructing defendant to contact him once he spoke to his source regarding large quantities of cocaine.

On or about December 29 or 30, 1987, defendant contacted Ferguson and again indicated he had not yet contacted his source. However, defendant asked Ferguson for a loan to repair his truck. Defendant also asked if he could be a "runner" for Ferguson, transporting money and drugs. Once again, Ferguson told defendant to contact him when defendant contacted his source. The next time Ferguson talked to defendant was on January 7, 1988.

Finally, Ferguson denied having indicated to defendant that an individual named Greg worked for the police.

On appeal, defendant contends the record does not support his convictions, in view of the evidence of entrapment, and argues we

must view the evidence in a light most favorable to him in making a determination on the issue.

■ Entrapment is a statutory defense of exoneration. (Ill. Rev. Stat. 1987, ch. 38, pars. 7—12, 7—14.) Pursuant to section 7—12 of the Criminal Code of 1961, a defendant cannot be guilty of an offense where the conduct forming the basis for the offense was incited or induced by a public officer or agent for purposes of obtaining evidence to prosecute. (Ill. Rev. Stat. 1987, ch. 38, par. 7—12.) The entrapment defense is inapplicable, however, where the defendant is merely afforded the opportunity or facility for committing the offense in furtherance of a criminal purpose originating with the defendant. (Ill. Rev. Stat. 1987, ch. 38, par. 7—12.) The critical inquiry, therefore, is defendant's predisposition to commit crime. *People v. Cross* (1979), 77 Ill. 2d 396, 396 N.E.2d 812, *cert. denied sub nom. Thomas v. Illinois* (1980), 445 U.S. 929, 63 L. Ed. 2d 762, 100 S. Ct. 1316.

■ Procedurally, as in instances where other affirmative defenses are asserted, the defendant is entitled to instruct the jury on the defense if, when viewing evidence presented in a light most favorable to the defendant, there is some evidence supporting the defense. (Ill. Rev. Stat. 1987, ch. 38, pars. 7—12, 3—2; *People v. Poulos* (1990), 196 Ill. App. 3d 653, 554 N.E.2d 448; see also *People v. Everette* (1990), 141 Ill. 2d 147, 565 N.E.2d 1295.) To convict, the State must then prove the defendant guilty beyond a reasonable doubt as to the defense together with all other elements of the crime. (Ill. Rev. Stat. 1987, ch. 38, par. 3—2(b).) Because the determination of defendant's predisposition to commit crime is dependent on the facts of the case, it is recognized that the issue is one for the trier of fact. *People v. Tipton* (1980), 78 Ill. 2d 477, 401 N.E.2d 528.

■ Following a conviction, that determination is accorded particular deference. The jury's role as weigher of the evidence is " 'preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.' " (Emphasis omitted.) (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573.) Accordingly, a reviewing court must affirm where, when viewing the evidence in that light, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.) That standard of review is applicable here just as it must be applied on review following any criminal conviction where an affirmative defense of exoneration has been prop-

erly considered, and rejected, by a jury. See, *e.g., People v. Parker* (1990), 194 Ill. App. 3d 1048, 1054-57, 551 N.E.2d 1012, 1017, *appeal denied* (1990), 132 Ill. 2d 552, 555 N.E.2d 383.

■ In *People v. Tipton* (1980), 78 Ill. 2d 477, 401 N.E.2d 528, a case involving an entrapment defense, the supreme court recognized application of that standard of review. In *Tipton*, the court disagreed with the appellate court's determination that the defendant had been entrapped, contrary to a jury's rejection of that defense at trial. The supreme court observed that the question of entrapment was one for the trier of fact, "unless the trial court or a reviewing court can find entrapment as a matter of law." (78 Ill. 2d at 487, 401 N.E.2d at 533; see also *People v. Poulos* (1990), 196 Ill. App. 3d 653, 658, 554 N.E.2d 448, 451.) Because evidence existed in the record to support the jury's rejection of the entrapment defense, the court was constrained to affirm the conviction. *Tipton*, 78 Ill. 2d at 487-88, 401 N.E.2d at 533.

Further indication of the standard of review as noted above can be found in the Supreme Court's decision in *Sherman v. United States* (1958), 356 U.S. 369, 2 L. Ed. 2d 848, 78 S. Ct. 819, the source of the language quoted from *Tipton* indicating reversal would be proper only where entrapment did not exist "as a matter of law." *Sherman* involved reversal of convictions for the sale of narcotics where undisputed testimony included the government informer's admission that he had induced the defendant to engage in the illegal activity. (*Sherman*, 356 U.S. at 373, 2 L. Ed. 2d at 851-52, 78 S. Ct. at 821.) The Court noted reversal was proper based on the undisputed testimony of the prosecution's witnesses, and specifically not in a choice between conflicting testimony on the issue. (*Sherman*, 356 U.S. at 373, 2 L. Ed. 2d at 851, 78 S. Ct. at 821.) Thus, "as a matter of law," reversal was warranted simply because the record contained no evidence to support the jury's verdict.

■ In short, we find no support for the assertion that a different standard of review should apply following a conviction where the issue of entrapment was raised and the jury properly instructed than is applied in any other appeal following a conviction where an affirmative defense of exoneration was properly considered. Reversal is proper only where, when viewing the evidence in a light most favorable to the prosecution, the record contains evidence such that any rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt.

■ In the instant case, viewing the testimony presented in a light most favorable to the State, defendant's conviction must be affirmed. Ferguson's testimony established that, through his informant, he met

and purchased a small quantity of cocaine from defendant and inquired of defendant if he could procure larger amounts. To that end, Ferguson established that defendant kept in contact with Ferguson while he attempted to contact his source, finally arranging the transaction on January 7, 1988. Although Ferguson did testify that he told defendant he was interested in large quantities of cocaine, it is undisputed that defendant made the initial contact with Ferguson on that day and actively participated in arranging the transaction. Last, Ferguson contradicted defendant's testimony that defendant's involvement was induced by a police informer named Greg. That evidence is sufficient to support the jury's rejection of defendant's entrapment defense and finding of guilt.

Defendant next contends comments made by the State during closing argument in rebuttal were improper because the comments appealed to the passions of the jurors. Defendant directs our attention to four comments with reference to children. In the first reference, the State, in an apparent attempt to draw attention away from sympathies the jury might have felt toward defendant after viewing the testimony of defendant's two children, invited jurors to think about those children whose lives might have been affected by the cocaine involved in the sale. In the second instance, the reference to children was included in a reference to adults and addicts whose lives might have been so affected. The third and fourth references concerned mothers of children and children in school who might have been affected by the cocaine.

■ The above references constituted error. Because the defense of entrapment entails defendant's admission of acts in commission of the offense as noted above, the relevant issue is confined to whether defendant's involvement was induced. The comments do not relate to evidence presented as to that fact.

However, because we conclude the comments were not of a sufficient nature to cause prejudice to defendant's case, we do not find the comments constitute reversible error. (See *People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19.) The improper commentary was relatively limited given the length of closing remarks. Further, the trial judge admonished the jury not to be influenced by sympathy, but to base its decision solely on the evidence, exclusive of closing remarks.

Finally, defendant contends his sentence of 12 years' imprisonment was excessive.

■ Trial courts have wide discretion in sentencing defendants and, absent finding an abuse, appellate courts must defer to that determination. (*People v. Anderson* (1986), 112 Ill. 2d 39, 490 N.E.2d

1263.) We note that defendant's sentence for his conviction of delivery of a controlled substance containing cocaine, a Class X felony, alone, was well within the maximum term of 30 years. (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2); Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(3).) We are satisfied that the trial judge properly considered the relevant factors in mitigation in determining defendant's sentence and simply can find no reason to justify substituting our own judgment in consideration of the same matter.

For the reasons set forth above, we affirm defendant's convictions and sentence.

Affirmed.

MANNING, P.J., and BUCKLEY, J., concur.