(Nos. 62397, 69286 cons

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. HENRY GRIFFIN, Appellant.

*Opinion filed March 12, 1992.—Rehearing denied June 1, 1992.*

MILLER, C.J., joined by FREEMAN, J., specially concurring.

BILANDIC, J., joined by CLARK, J., concurring in part and dissenting in part.

Sam Adam, of Chicago, for appellant.

Neil F. Hartigan and Roland W. Burris, Attorneys General, of Springfield, and Richard M. Daley and Jack O'Malley, State's Attorneys, of Chicago (Mark L. Rotert and Terence M. Madsen, Assistant Attorneys General, of Chicago, and Thomas V. Gainer, Jr., Kenneth T.

McCurry, Joan E. Disis, Renee Goldfarb and Joseph Brent, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Henry Griffin, was found guilty of murder, solicitation to commit murder and conspiracy to commit murder. He was sentenced to death. Defendant's execution was stayed pending direct review by this court in cause No. 62397. Defendant subsequently filed a petition for post-conviction relief. The State filed a motion to dismiss the petition, which was granted by the trial court. The dismissal of defendant's post-conviction petition was appealed directly to this court in cause No. 69286 (Ill. Const. 1970, art. VI, §4(b); 134 Ill. 2d Rules 603, 609(a)). We affirm.

## FACTS

The body of Carl Gibson was discovered near the 73rd Street exit ramp off of the Chicago Skyway on the morning of June 21, 1984. He had been shot four times at close range several hours earlier. A homicide investigation ensued.

At the time of the Gibson murder, the Chicago police department and the State's Attorney's office of Cook County were involved in "Operation Camelot"—an investigation of a major drug operation located on Chicago's south side. The investigation targeted the narcotics network of Charles Ashley, a drug dealer whose activities yielded an estimated $3 million annually. The victim was employed in Ashley's drug operation.

Also employed by Ashley's drug operation was Darryl Moore, who was arrested in August 1984 on drug and unlawful use of weapons charges. While in jail, Moore

contacted Michael Pochordo, a detective with the Violent Crimes Division of the Chicago police department. Moore informed Pochordo that he had information concerning the Gibson murder and Pochordo set up a meeting with Moore and representatives of the State's Attorney's office. At a meeting on August 7, 1984, Moore supplied the State's Attorney's office with information concerning defendant's involvement in the murder. The information was sufficient for them to request permission for a consensual overhear device for use in Moore's contact with defendant. Application for the overhear device was approved by the circuit court of Cook County on August 8, 1984. On August 9, 1984, a tape-recording device was assembled at the State's Attorney's office, and Moore was instructed to call defendant. Moore recognized defendant's voice because he had known him through their "enforcer" work, and had spoken to him at least 100 times. During his taped conversation with Moore, defendant implicated himself in the murder of Carl Gibson.

Defendant was subsequently arrested and transported to the Violent Crimes Division in Area I. James Allen was also arrested in connection with the incident, and the men were placed in separate interview rooms. Assistant State's Attorney Neil Cohen was introduced to defendant and read defendant his *Miranda* warnings. Defendant inquired as to whether Cohen had talked to Allen and, upon hearing that Allen had made a statement, waived his *Miranda* rights and confessed to his participation in Gibson's murder. Defendant's confession revealed the following facts.

Ashley approached defendant and asked him if he would kill Gibson for $2,500. Ashley said that he wanted Gibson eliminated because he suspected that Gibson was secretly passing information to police. The offer was made and accepted in the presence of James Allen.

Defendant and Allen then proceeded to the apartment of Darryl Moore, to obtain a gun. Moore was a fellow "enforcer" for Ashley and he and defendant had worked together in the past. Moore gave defendant a .38-caliber revolver, and defendant and Allen left the apartment and dropped off members of defendant's family at home.

Defendant returned from the family home to the car accompanied by Carl Gibson. Allen drove the car, Gibson sat in the passenger seat, and defendant sat in the back seat. Allen drove onto the Chicago Skyway at 89th Street, proceeding southbound. When he reached a toll plaza, he turned the car around and proceeded northbound. While driving northbound on the Skyway, defendant shot Gibson four times in the back of the head with a .38-caliber revolver. Allen then exited the Skyway at 73rd Street and stopped the car on the exit ramp. Defendant then pulled the body out of the car. The next day, defendant gave the murder weapon to Ashley. The rental car used in the slaying was disposed of by defendant and Allen. Defendant was paid by Ashley in cash and cocaine.

Subsequent to his confession, defendant was indicted with his codefendants Charles Ashley and James Allen, for conspiracy to commit murder, solicitation to commit murder and murder. Prior to trial, the court found defendant fit to stand trial and denied defendant's motion to suppress evidence seized pursuant to a search warrant. The case was tried before a jury in June 1985. Moore testified as part of the State's evidence against defendant. Additionally, Assistant State's Attorney Cohen testified regarding the defendant's oral and written confessions. The taped telephone conversation between Moore and the defendant was also admitted into evidence. Following presentation of the State's evidence, the defense called its only witness, Detective Pochordo. Pochordo testified that he was initially contacted by

Moore and that Moore had been an informant in 10 previous homicide cases, six of which had resulted in murder convictions to date. The jury found defendant guilty on all counts.

Defendant raises numerous issues on appeal, none of which have merit.

## POST-CONVICTION PETITION

On November 17, 1989, defendant filed a post-conviction petition alleging that "substantial perjury" was employed to convict defendant and that the State's Attorney's office knew or should have known of the perjured evidence. Specifically, the petition alleged that Darryl Moore was paid $25,000 by the State's Attorney's office to lie at defendant's trial, and that Detective Pochordo's affidavit which supported the taped conversation was also a lie. Attached to the petition was a transcript of a video recording wherein Moore recanted his trial testimony and an excerpt of Moore's testimony at an unrelated trial. The petition requested an evidentiary hearing.

The video recording was taken on August 20, 1986, by defense attorney, Sam Adam. On the recording, Moore stated that his testimony at the defendant's trial was a lie. He further stated that his testimony was based on information he had received from Detective Pochordo and members of the State's Attorney's office. In particular, Moore had received a copy of James Allen's 16-page statement made subsequent to his arrest for the murder. In return for his testimony, Moore stated that he was housed in a Holidome hotel with his fiancee, that his living expenses were paid for, and that he was provided with money to purchase a catering truck from which he could sell hot food. Moore testified that the money for his "lavish lifestyle" came from the State's Attorney's office.

On August 10, 1987, Moore was a key witness in another Cook County homicide case, People v. Freeman, No. 86—CR—2090. During his testimony, Moore stated that he had lied at defendant's trial, and had been paid to do so by Detective Pochordo and members of the State's Attorney's office.

The State filed a motion to dismiss defendant's petition on September 27, 1989, arguing that the petition failed to raise any constitutional questions within the scope of the Post-Conviction Hearing Act (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*). On September 28, 1989, Judge Earl Strayhorn of the circuit court of Cook County heard argument on the motion to dismiss and granted same, finding "no constitutional imperfections as to petitioner's rights in the trial of the case."

At the outset, we note that the trial court properly proceeded on the motion to dismiss pursuant to section 122—5 of the Post-Conviction Hearing Act (Ill. Rev. Stat. 1987, ch. 38, par. 122—5).

Defendant contends that Moore perjured himself by his trial testimony and that the trial court erred in denying an evidentiary hearing on defendant's post-conviction petition for relief. The line of cases cited by defendant for the proposition that an evidentiary hearing is necessary is not persuasive, as each case is distinguishable on its facts.

The Post-Conviction Hearing Act does not require a trial judge to conduct an evidentiary hearing. The Act gives the post-conviction judge broad discretion as to the type of evidence he may consider in ruling on the allegation of the petition. Section 122—6 of the Act provides: "The court may receive proof by affidavits, depositions, oral testimony, or other evidence." (Ill. Rev. Stat. 1987, ch. 38, par. 122—6.) In *People v. Derengowski* (1969), 44 Ill. 2d 476, this court held that "an evidentiary hearing is not always necessary 'since the circuit court, upon a

motion to dismiss a post-conviction petition, may render its decision on the basis of what is contained in the pleading to which the motion is directed, considered with the transcript of trial or other proceedings.' " (44 Ill. 2d at 478-79, quoting *People v. Morris* (1969), 43 Ill. 2d 124, 128.) The trial court was provided with transcripts of Moore's recantation as well as trial transcripts from the unrelated trial in which Moore once again testified that he had lied in defendant's trial.

Additionally, Judge Strayhorn presided over defendant's jury trial as well as the hearing on the post-conviction petition. In *People v. Humphrey* (1970), 46 Ill. 2d 88, this court held that when considering whether to grant an evidentiary hearing on a post-conviction petition that alleges the knowing use of perjured testimony against defendant, the trial judge who presided at the trial may determine the credibility of the person alleging the perjury by reviewing the documents supporting the defendant's petition. Oral testimony of defendant and informant is not necessary. (46 Ill. 2d at 91-92.) Measuring by the established standards of this court and the language of the statute, we do not believe that the trial court abused its discretion in ruling on the allegations of the petition without conducting an evidentiary hearing.

## ALLEGED TRIAL ERRORS

Having determined that the trial court properly dismissed defendant's post-conviction petition for relief, we now address defendant's allegations of trial errors.

### Opening Statement

Defendant contends that the State in its opening statement improperly discussed Charles Ashley's drug operation. Specifically, defendant argues that the evidence was never introduced at trial because the testimony of witness Sherman Overstreet was subsequently

prevented by the trial court. Overstreet was to testify regarding Ashley's drug activities. A review of the record reveals that ample evidence of Ashley's drug network was presented by the testimony of other witnesses. The discussion of Ashley's business in opening statement resulted in no prejudice to defendant.

Defendant next argues that codefendant James Allen's post-arrest statement was improperly discussed in the State's opening argument. The record discloses no mention of Allen's post-arrest statements during opening statements. The State outlined the planning and execution of the murder by defendant and Allen, details of which were presented at trial through the testimony of prosecution witnesses and defendant's taped confession. A purpose of opening argument is to inform the fact finder of what the evidence will show. (*People v. Warmack* (1980), 83 Ill. 2d 112, 125.) No prejudice to defendant resulted by the opening remarks.

### Taped Conversation

Defendant next challenges the admissibility of the taped conversation between Moore and himself, arguing that the State failed to lay an adequate foundation for its admission. Defendant alleges that the State did not establish the identity of the speakers on the tape. The record includes an identification of defendant's voice by Moore, who testified that he had spoken to defendant more than 100 times in person and recognized his voice. In addition, Assistant State's Attorney Cohen testified that he recognized the defendant's voice to be the speaker on the telephone after he spoke to the defendant and took his statement at the police station. Cohen had been listening with an earphone as the telephone conversation was taped. Finally, defendant admitted that he had received a telephone call from Moore on the day of

his arrest and acknowledged that he had talked about the Gibson "hit" during that conversation.

The State moved for admission of the taped conversation after the presentation of all the evidence. Defendant objected and the trial court discussed the legal standards for admission and held that a proper foundation had been laid. An adequate foundation can be established for a tape-recorded telephone conversation when a witness to the conversation recorded on tape testifies that the tape, as presented in court, accurately portrays the conversation in question. (*People v. Williams* (1985), 109 Ill. 2d 327.) The State's evidence was adequate to establish a proper foundation for admission of the tape-recorded telephone conversation between Moore and defendant. Moore accurately identified defendant as the speaker and testified that the tape accurately portrayed the conversation between him and defendant.

Defendant also challenges the admissibility of the tape recording by asserting that the tape was inaudible. The trial judge is accorded wide discretion in imposing conditions upon the admissibility of taped evidence. (*People v. Ash* (1974), 16 Ill. App. 3d 633.) In the instant case, the trial judge examined the tape and listened to it before allowing its admission. At the time of admission, defendant made no objection to its admission on audibility grounds and no discussion of the sound quality took place. The trial court, within its discretion, found the tape properly admissible.

## Ineffective Assistance of Counsel

Defendant argues that he received ineffective assistance of counsel as a result of his counsel's failure to: (1) file a motion challenging the voluntariness of his confessions; (2) present a challenge to the admissibility of the tape recording under *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674; (3) investi-

gate the defendant's alleged history of mental illness; and (4) present sufficient mitigation evidence at the sentencing hearing. None of defendant's contentions have merit.

A claim for ineffective assistance of counsel must meet the requirements enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, which requires that defendant show: (1) that his counsel's representation fell below an objective standard of reasonableness; and (2) that there was a reasonable probability that were it not for the prejudicial errors committed by counsel, the outcome of the proceedings might have been different. Illinois adopted the *Strickland* standard in *People v. Albanese* (1984), 104 Ill. 2d 504.

The record reflects that defendant made a knowing waiver of his *Miranda* rights prior to his confession. During his initial interview at the police station, defendant waived his *Miranda* rights and made an oral confession to police. He subsequently gave the statement to a court reporter. Assistant State's Attorney Cohen testified that defendant was alert and lucid throughout the proceedings. The court reporter was able to understand defendant and take his statement. Although defendant contends that he was under the influence of narcotics at the time he made the confession, the record offers no evidence of such influence. A motion challenging defendant's post-arrest statement on voluntariness grounds would have been futile, and failure to make such an attempt cannot serve as a basis for alleging inadequate representation. *People v. Kubat* (1983), 94 Ill. 2d 437.

Additionally, defense counsel challenged the admissibility of the tape recording at trial, requested a fitness hearing and had defendant examined by a psychiatrist, and presented evidence in mitigation at the sentencing

hearing. Defendant has failed to make the necessary *Strickland* showing.

### Constitutionality of Illinois Death Penalty Act

Defendant asserts that the death penalty statute is unconstitutional in that it: (1) has been determined to be unconstitutional by a majority of this court; (2) denies equal access to post-conviction review; and (3) does not sufficiently minimize the risk of arbitrary and capricious sentences. Defendant's arguments have previously been considered and rejected by this court, and we continue to adhere to those stated position on these issues. See *People v. Brisbon* (1985), 106 Ill. 2d 342; *People v. Albanese* (1984), 104 Ill. 2d 504; *People v. Kubat* (1983), 94 Ill. 2d 437.

## CONCLUSION

For the reasons set forth above, we affirm the defendant's convictions and sentence of death. The clerk of this court is directed to enter an order setting Tuesday, September 15, 1992, as the date on which the sentence of death entered by the circuit court is to be executed. The defendant shall be executed in the manner provided by law (Ill. Rev. Stat. 1987, ch. 38, par. 119—5). A certified copy of the mandate in this case shall be delivered by the clerk of this court to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution wherein defendant is confined.

*Affirmed.*

CHIEF JUSTICE MILLER, specially concurring:

The defendant, in the direct appeal from his conviction and death sentence, challenges his trial attorney's performance on several different grounds. With little or no discussion, the majority rejects these contentions,

concluding that they are without merit. Although I agree with the court's ultimate determination, I write separately to explain the basis for my agreement.

The defendant raises four distinct challenges to his trial attorney's performance. The defendant first argues that trial counsel was ineffective for failing to seek the suppression of his inculpatory statements on the ground that they were involuntary. The statements at issue consist of the defendant's prearrest tape-recorded conversation with a police informant and his two post-arrest confessions to an assistant State's Attorney. The defendant alleges that he was under the influence of illicit drugs during his conversation with the informant and during the initial session of official interrogation, and that he was experiencing withdrawal symptoms during the concluding session of interrogation. The defendant asserts that his faculties were impaired at those times and that the statements he made on those occasions must therefore be deemed involuntary. As a related matter, the defendant argues that he was unable for the same reasons to make knowing and intelligent waivers of his *Miranda* rights prior to being questioned by the assistant State's Attorney. The majority opinion considers only the defendant's post-arrest statements and, in a brief discussion, concludes that the defendant's *Miranda* waivers were valid and his custodial statements voluntary.

Trial counsel properly refrained from attempting to challenge, on voluntariness grounds, admission of the defendant's prearrest tape-recorded conversation with the police informant. At the time of that conversation, the defendant was not in custody and had not yet been charged with the present offense. Accordingly, the admission of the statement into evidence did not implicate any of the defendant's constitutional rights. (See *Illinois v. Perkins* (1990), 496 U.S. 292, 110 L. Ed. 2d 243, 110

S. Ct. 2394; *Hoffa v. United States* (1966), 385 U.S. 293, 17 L. Ed. 2d 374, 87 S. Ct. 408.) With regard to the post-arrest statements, the defendant offers only conclusory allegations that his consumption of drugs must have diminished his mental functioning, and the record evidence contradicts the defendant's intoxication theory. At trial, the assistant State's Attorney who conducted the interrogations testified that the defendant was alert and lucid throughout those periods, agreed to waive his rights under *Miranda*, and had no difficulty understanding or answering questions. On each occasion, the defendant provided a coherent and detailed account of his role in the offense charged here. In addition, during the later round of questioning, the defendant was specifically asked whether he was then under the influence of alcohol or controlled substances, and he responded in the negative. Interrogation ceased when, during the preparation of the formal statement, the defendant requested the assistance of counsel. Entirely absent from the present case is any element of police coercion or overreaching, a necessary predicate for a finding of involuntariness. *Colorado v. Connelly* (1986), 479 U.S. 157, 93 L. Ed. 2d 473, 107 S. Ct. 515.

A motion by defense counsel seeking suppression of the defendant's statements on the grounds raised here would have been unavailing. An attorney will not be considered ineffective under *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, for failing to pursue what would have been a futile motion (*People v. Hall* (1986), 114 Ill. 2d 376, 408), and the present challenges to defense counsel's performance must therefore be rejected.

The defendant next argues that trial counsel did not properly challenge, under *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, the police officer's affidavit that was used to obtain authoriza-

tion for the consensual eavesdropping device. In the present case, authority for the use of the device was obtained in accordance with the provisions of article 108A of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, pars. 108A—1 through 108A—11). Applying the *Franks* principles to the order procured under this statutory regimen, I would conclude that the authorization was valid, notwithstanding certain discrepancies in the supporting affidavit.

Throughout the trial, defense counsel was permitted to attack the police officer's affidavit that had been used to obtain authorization for the eavesdropping device. The testimony received on this question discloses that the officer incorrectly included an offense in the list of those for which the informant had previously provided assistance and neglected to state that the informant was then in jail on a pending charge and had been in jail at other times. In addition, contrary to the assertion contained in the affidavit, it was not clear whether the informant had actually seen the murder weapon. The trial judge rejected the defense contention that these discrepancies in the officer's affidavit would have vitiated the order authorizing the use of the eavesdropping device.

A search may be upheld under *Franks* if, after excision of the challenged statements from the supporting affidavit, the remaining information would have provided probable cause for issuance of the warrant. (*Franks*, 438 U.S. at 171-72, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684; *People v. Edwards* (1991), 144 Ill. 2d 108, 132; *People v. Eyler* (1989), 133 Ill. 2d 173, 204.) Contrary to the defendant's contention, allegations that are objectionable under *Franks* will not automatically doom a supporting affidavit. (*People v. Lucente* (1987), 116 Ill. 2d 133, 145-46.) Adapting these principles to the statutory context here, I would conclude that the remaining allegations in the officer's affidavit would have satisfied the statutory

requirements for authorization of the consensual eaves-dropping device. Those allegations established the informant's consent to use of the eavesdropping device and provided reasonable cause to believe that the defendant had committed the felony and that conversations concerning that offense could be obtained through use of the device. (See Ill. Rev. Stat. 1987, ch. 38, par. 108A—4.) Accordingly, it cannot be said that trial counsel was ineffective for having failed to perfect the *Franks* objection in advance of trial.

In his next challenge to trial counsel's performance, the defendant argues that counsel was ineffective for failing to introduce at the pretrial competency hearing records detailing his earlier treatment for mental illness. The defendant believes that this additional evidence would have provided strong support for his claim that he was not competent to stand trial. The majority opinion rejects the defendant's contention on the grounds that defense counsel requested a fitness hearing and had the defendant examined by a psychiatrist. It is not clear from the court's discussion whether the majority believes that obtaining an expert opinion and having a hearing, without more, must generally be deemed sufficient to fulfill counsel's professional obligations with respect to an accused's fitness claim. If so, the majority ignores the present defendant's contention that other evidence bearing on the question was available and that counsel was ineffective in failing to introduce it at the fitness hearing. In any event, I would note that the evidence at issue here was remote in time, and that the substance of it was before the trial court anyway.

The additional evidence the defendant now suggests should have been submitted at the competency hearing was simply too remote in time to be relevant here and would not have been helpful to the judge in determining the defendant's competency to stand trial. This informa-

tion consisted of 20-year-old records made during the defendant's commitment to a State mental health center following a suicide attempt in the 1960s. In the proceedings below, the psychiatrist who examined the defendant was aware of the defendant's personal history and the circumstances of his prior treatment. The records themselves would have been of doubtful utility to the judge in determining the defendant's competency to stand trial at the time relevant here. See *People v. Woods* (1963), 26 Ill. 2d 557, 561.

In a related contention, which the majority opinion does not address, the defendant argues that counsel was ineffective for waiting until the eve of trial to make the competency motion. The defendant believes that an earlier motion would have permitted counsel to obtain additional expert opinions on the competency issue. It is not evident from this record, however, that counsel had cause to present the motion at an earlier time. Counsel made the motion because he was having difficulty communicating with the defendant in preparation for trial, and the defendant has presented nothing to indicate that counsel should have raised the issue earlier.

The defendant's final series of challenges to trial counsel's performance pertains to the capital sentencing hearing conducted in the present case. The defendant first argues that counsel was ineffective for failing to present, during the second stage of the sentencing hearing, evidence of the defendant's history of mental illness. The majority opinion's response to this contention is to note that other mitigating evidence was presented on the defendant's behalf. Contrary to the majority's view, however, the presentation of other evidence in mitigation does not alone conclude the matter. It is clear that counsel has a duty to investigate a defendant's personal history and background and to introduce appropriate testimony in support of his client's interests. (*People v. Ruiz*

(1989), 132 Ill. 2d 1; *People v. Caballero* (1989), 126 Ill. 2d 248.) That counsel introduced some mitigating evidence does not mean that counsel acted properly in failing to introduce other evidence.

The evidence now proposed by the defendant consists of the same mental health records he contends should have been submitted in support of his competency motion. As I have stated, the suggested evidence was remote in time and would have been of doubtful utility to the court in assessing the defendant's mental condition. By the same token, defense counsel could well have believed that this information, already made known to the court through the testimony of the examining doctor, would have added little to the sentencing determination. Under *Strickland*, counsel's strategic decisions are entitled to deference, and here, counsel was not required to introduce evidence merely because it existed.

The defendant raises two further points in support of his contention that defense counsel was ineffective at the sentencing hearing. The defendant asserts that counsel failed to adequately prepare defense witness Ida Powe for the hearing because he did not talk to her until shortly before she was called to testify. Powe provided favorable testimony concerning the defendant's character and reputation. The defendant has failed to point out, however, in what respect the value of Powe's testimony was affected by counsel's failure to talk to her at an earlier time. The defendant further contends that counsel made an inadequate argument at the conclusion of the second stage of the sentencing hearing. The defendant complains that counsel's argument ignored the available evidence of his psychological history and focused instead on the reliability of the testimony of his involvement in the charged offense. The defendant had a lengthy criminal history, however, and he committed the murder charged here only two months after his parole

from prison. Apparently believing that the defendant's personal history provided little, if any, mitigation, counsel chose to argue to the sentencing judge that the evidence of the defendant's guilt for this offense should not form the basis for a death sentence. Counsel's strategic decision is entitled to deference, and the defendant has failed to show that a different closing argument would have produced a different result.

In sum, although I agree with the court in its ultimate determination that the defendant was not denied the effective assistance of counsel at trial or in the sentencing hearing, I believe that those issues warrant more extensive treatment than that provided by the majority. For the reasons stated, I concur in the court's judgment.

JUSTICE FREEMAN joins in this special concurrence.

JUSTICE BILANDIC, concurring in part and dissenting in part:

This case involves two separate and distinct appeals. The first is defendant's direct appeal from his conviction and sentence. Based upon the record, briefs and arguments, I concur with the majority in affirming defendant's conviction and death penalty.

The second appeal involves the dismissal, without an evidentiary hearing, of defendant's post-conviction petition. The majority affirms the trial court's dismissal of the post-conviction petition without an evidentiary hearing. At this significant juncture, I must respectfully dissent.

The Post-Conviction Hearing Act (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*) is designed to provide a post-conviction remedy for violations of a defendant's substantial constitutional rights at trial. (*People v. Cihlar* (1986), 111 Ill. 2d 212, 216.) In order to prevail

under the Act, a defendant must establish that there was action by the State inconsistent with fundamental principles of liberty and justice which reflect the community's sense of fair play and decency. (*People v. Cornille* (1983), 95 Ill. 2d 497, 508.) A defendant proceeding under the Act is entitled to an evidentiary hearing when the allegations of his petition, supported by accompanying affidavits or transcripts, make a substantial showing that the defendant's fundamental rights have been violated. (*People v. Caballero* (1989), 126 Ill. 2d 248, 259.) When the State moves for the dismissal of a defendant's post-conviction petition, the truth of the petition's factually supported allegations is assumed and the issue is solely whether the allegations, if proved, would constitute a constitutional defect. *People v. Wilson* (1968), 39 Ill. 2d 275, 277; *People v. Brumas* (1986), 142 Ill. App. 3d 178, 180.

It has long been recognized, by both the United States Supreme Court and this court, that the deprivation of an individual's liberty based upon false testimony is contrary to fundamental principles of fairness in a civilized society. (See, *e.g.,* *Napue v. Illinois* (1959), 360 U.S. 264, 269, 3 L. Ed. 2d 1217, 1221, 79 S. Ct. 1173, 1177; *Cornille*, 95 Ill. 2d at 509.) "Perjury is the mortal enemy of justice" (*People v. Shannon* (1975), 28 Ill. App. 3d 873, 878), and, as stated by the Supreme Court, "[t]he government of a strong and free nation does not need convictions based upon such testimony." *Mesarosh v. United States* (1956), 352 U.S. 1, 14, 1 L. Ed. 2d 1, 10, 77 S. Ct. 1, 8.

The majority recognizes that Darryl Moore was the key prosecution witness that provided information that led to defendant's arrest for the murder of Carl Gibson. His testimony at trial contributed to the success of the prosecution. Defendant was convicted on July 2, 1985.

Approximately two years later, on August 10, 1987, Moore was the key witness for the prosecution in another Cook County homicide (People v. Freeman, No. 86—CR—2090). During his testimony in that case, Moore testified under oath that he had lied at defendant's trial two years earlier. Moore further testified that he was paid to do so by a police detective and members of the State's Attorney's office.

On another occasion after defendant's conviction, Darryl Moore stated that he had lied at defendant's trial. On August 20, 1986, Moore gave a video-taped statement in which he repudiated his testimony incriminating defendant. He also stated facts and circumstances that alleged improper conduct on the part of law enforcement agencies with which Moore was cooperating to obtain financial rewards and lenient treatment for crimes he had committed.

The post-conviction petition, supported by affidavits and transcripts containing Moore's testimony at the Freeman trial and his video-taped statement, was never answered by the prosecution. A motion to dismiss was filed approximately 22 months later. As previously stated, a motion to dismiss admits all well-pleaded facts in the post-conviction petition. *Wilson*, 39 Ill. 2d at 277.

Therefore, the sole issue is whether the trial court properly dismissed defendant's post-conviction petition as a matter of law.

The record reveals that Darryl Moore spoke on three separate occasions on critical matters which resulted in defendant's conviction. The first statement was at defendant's trial. On two subsequent occasions, the video statement and the Freeman trial, Moore stated that his trial testimony against defendant was a lie. Darryl Moore is a self-confessed liar. The only question is when the lie occurred. When the life of a defendant is at stake, it is better to search for the truth at an eviden-

tiary hearing than to rely on the discretion of the trial judge.

I believe that the majority's decision conflicts with this court's holding in *People v. Cihlar* (1986), 111 Ill. 2d 212. Therein, the defendant filed a post-conviction petition in which the defendant claimed to have recently discovered several witnesses whose testimony would show that the victim had lied on the stand. The petition also proposed to present the testimony of a witness who had testified at defendant's trial but had not revealed, during that testimony, a statement the victim had made to her which contradicted the victim's trial testimony. The trial court dismissed the petition without conducting an evidentiary hearing. This court reversed and remanded for an evidentiary hearing. (*Cihlar*, 111 Ill. 2d at 217.) Recognizing the fundamental rights implicated when a conviction is based on perjured testimony, this court determined that the defendant had sufficiently alleged a violation of substantial constitutional rights and was entitled to an evidentiary hearing on his petition. *Cihlar*, 111 Ill. 2d at 217.

In the instant case, the evidence of possible perjury was even stronger than that presented in *Cihlar*. Here, the key witness is himself stating that his testimony at defendant's trial was false. In *Cihlar*, the veracity of the victim's testimony was being challenged by the testimony of third parties, not by the victim herself. Further, in *Cihlar*, this court noted that the fact of the proposed additional testimony of the witness who had testified at trial could have been raised on direct appeal, but the defendant failed to raise it. Despite this ostensible waiver, this court determined that fundamental fairness required that the issue be adjudicated at an evidentiary hearing. (*Cihlar*, 111 Ill. 2d at 218.) Also noteworthy is that, in *Cihlar*, the proposed testimony of the additional witnesses was fully set out in the defendant's petition,

yet this court did not find that the trial judge's bare reading of the proposed testimony was an adequate substitute for the live testimony of those witnesses. Likewise, in the case at bar, the trial judge's review of the transcripts of Moore's recantation testimony cannot take the place of a full evidentiary hearing on defendant's petition.

In addition to *Cihlar*, several other cases, from this court and the appellate court, undermine the majority's holding. In *People v. Sawyer* (1971), 48 Ill. 2d 127, this court remanded for an evidentiary hearing where the defendant's post-conviction petition alleged that the prosecutor failed to correct the record when the key prosecution witness falsely testified about her criminal record. The court found that these allegations, supported by the affidavit of defense counsel, were sufficient to make a substantial showing that the defendant's constitutional rights were violated and thus to entitle the defendant to an evidentiary hearing. (*Sawyer*, 48 Ill. 2d at 131.) In *People v. Martin* (1970), 46 Ill. 2d 565, a police informer and a police officer both testified at the defendant's trial that the informer was never paid by the police for his informer services. The trial court dismissed, without an evidentiary hearing, the defendant's post-conviction petition which alleged that, at a later, unrelated trial, another police officer testified that this particular informer was, on occasion, paid for his services by the police. This court held that these allegations were sufficient to make a substantial showing of a constitutional violation and that an evidentiary hearing was required to determine if the violation did in fact occur. *Martin*, 46 Ill. 2d at 568; see also *People v. Spicer* (1976), 42 Ill. App. 3d 246, 250 (dismissal without an evidentiary hearing was improper where the defendant's post-conviction petition contained allegations, supported by affidavit, that the prosecution allowed its key witness

to falsely testify that he had been offered no consideration for his testimony).

The precedents of this court and principles of fundamental fairness require an evidentiary hearing. The evidentiary hearing may confirm the fact that the trial judge exercised sound discretion in dismissing defendant's post-conviction petition. However, under the facts of this case, I do not believe that we should permit the extreme penalty to be inflicted without the safeguard of an evidentiary hearing. For these reasons, I respectfully dissent.

JUSTICE CLARK joins in this partial concurrence and partial dissent.