THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOUGLAS BARNES, Defendant-Appellant.

First District (1st Division)   No. 1—88—2562

Opinion filed May 18, 1992.

---

Mary Ellen Dienes, of Chicago, for appellant.

John M. O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Gael O'Brien, and Jeanne Lobelson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

On November 25, 1986, defendant was arrested by law enforcement agents who were monitoring a narcotics transaction in which defendant delivered to Frank White, an acquaintance, one kilogram of cocaine. Defendant was later convicted of delivery of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)) and was sentenced to 12 years' imprisonment.

We affirm.

Defendant's conviction was attained through the cooperation of White, a Federal felon, who had agreed to aid efforts by Federal Drug Enforcement Administration (DEA) and Federal Bureau of Investigation (FBI) agents in several narcotics-related investigations. White was released from prison to facilitate his cooperation but remained under custody of FBI agents.

Between November 15 and 25, 1986, White engaged in a series of telephone conversations with defendant which were recorded with the permission of the United States Attorney. At some time after November 20, 1986, but prior to defendant's arrest, Federal prosecution of defendant's case was declined, and the matter was referred to local law enforcement authorities.

The recorded telephone conversations, contained on nine audio cassette tapes, constituted a considerable portion of the State's evidence against defendant. Defendant unsuccessfully sought to suppress those recordings prior to trial. He now contends the trial judge erred in admitting the tapes into evidence because no attempt was made to comply with the statutory proscription in Illinois against eavesdropping (Ill. Rev. Stat. 1985, ch. 38, par. 14—1 *et seq.*), a fact the State concedes.

Where, as here, the recorded conversations were obtained with the proper approval of Federal authorities pursuant to a Federal investigation, the relevant inquiry for purposes of using that evidence in a State prosecution is whether there was collusion between Federal

and State authorities. *(People v. Hodge* (1991), 220 Ill. App. 3d 886, 581 N.E.2d 334, *appeal denied* (1992), 143 Ill. 2d 643, 587 N.E.2d 1020.) Absent collusion, such recordings properly may be admitted. *People v. Manna* (1981), 96 Ill. App. 3d 506, 421 N.E.2d 542.

FBI special agent Ross Rice detailed the circumstances giving rise to the creation of the recordings. Rice explained that White had been a target of FBI investigation since June 1985. Defendant's name was known to the FBI as a result. At the time the decision was made to record the conversations, Rice had not discussed White's cooperation with State or local law enforcement authorities. The investigation was entirely a Federal one. White had agreed to permit the FBI to intercept and record his conversations with defendant, and the FBI obtained the approval of the United States Attorney for that purpose.

Although the DEA presented the cases it was investigating to the United States Attorney, prosecution of defendant's case was declined because the quantity of cocaine involved was believed to be only several ounces. Defendant's case was then referred to local authorities.

Rice explained, Ray Lloyd, a member of the Tinley Park police department who was assigned to the Northeast Metropolitan Narcotics Enforcement Group, was then enlisted to pose as White's financier in the transaction. As of that time, Rice's role was limited to surveillance and to protecting White.

Rice stated that the "majority" of conversations between White and defendant were recorded prior to the time Federal prosecution in defendant's case was declined. Rice explained the reasons for continuing the recording of White's conversations with defendant after that time in the following manner:

> "Well, again [Federal law enforcement authorities] were \*\*\* somewhat skeptical as to the sincerity of Mr. White's desire to cooperate and we wanted to insure that we had complete control of him while he was out of [Federal custody] and again prior to his being sentenced. It was just \*\*\* the policy [that] the U.S. Attorney's office came up with and wanted us to follow through with. They felt since we had already began [*sic*] recording certain conversations, or in this case numerous conversations, that we should continue to do so."

Ray Lloyd stated he was first advised of, and asked to participate in, the investigation on November 24, 1986, after Federal prosecution had been declined. He did not know White or defendant before that time and had not participated in any decision leading to White's cooperation. Lloyd was even unaware White was wearing a transmitting

device and was recording the conversations when he accompanied White during the transaction.

■ The above testimony indicates no collusion between Federal and State law enforcement authorities which would prevent the admission of the tape-recorded conversations. The recordings were made in furtherance of a Federal investigation. Although Federal authorities eventually referred the matter to local law enforcement authorities after Federal prosecution was declined, that cooperation does not constitute the type of collusion which should operate to bar the use of the recordings here. See *Hodge*, 220 Ill. App. 3d at 888-89.

■ Alternatively, defendant asserts that the tape recordings were admitted improperly as evidence because some of the conversations were incomplete and portions were inaudible.

No reason exists to conclude the audio tapes were inadmissible on that basis. Only minor portions of the recordings are inaudible and those instances are not so substantial as to render the recordings, as a whole, untrustworthy. *People v. Rogers* (1989), 187 Ill. App. 3d 126, 543 N.E.2d 300, *appeal denied* (1989), 128 Ill. 2d 670, 548 N.E.2d 1076. See also *People v. Griffin* (1992), 148 Ill. 2d 45 (trial judge is accorded wide discretion in imposing conditions upon the admissibility of taped evidence).

■ At trial, defendant asserted an entrapment defense (Ill. Rev. Stat. 1985, ch. 38, par. 7—12) and sought to establish that he played no active role in the sale. When a defendant has presented evidence in furtherance of that defense, the State must prove guilt beyond a reasonable doubt as to the defense together with all other elements of the crime charged. (Ill. Rev. Stat. 1985, ch. 38, par. 7—12; *People v. Gannon* (1991), 213 Ill. App. 3d 560, 572 N.E.2d 1133.) The entrapment defense, however, is inapplicable where the defendant merely is afforded an opportunity or facility for committing the offense in furtherance of a criminal purpose originating with the defendant. (Ill. Rev. Stat. 1985, ch. 38, par. 7—12; *People v. Gannon*, 213 Ill. App. 3d 560, 572 N.E.2d 1133.) The relevant inquiry is whether defendant has a predisposition to commit crime. *People v. Gannon*, 213 Ill. App. 3d 560, 572 N.E.2d 1133.

Defendant testified White first contacted him by telephone in June 1986, seeking his assistance in a transaction to sell cocaine. White asked defendant to inquire as to price and quantity. Although he sought out that information, defendant denied he did anything more voluntarily in furtherance of the transaction, operating only to "get the message" to interested individuals.

Defendant contends here that the evidence showed he was reluctantly drawn into the transaction only upon White's proddings. In fact, defendant claims, his reluctance actually caused him to attempt to withdraw from the illegal conduct. He therefore asserts the evidence was insufficient to prove him guilty beyond a reasonable doubt.

The tape-recorded conversations, however, contradict defendant's entrapment theory and belie his argument on appeal. The first recorded conversation of November 15, 1986, reveals defendant was eager to participate in the transaction once White suggested the mere desire to raise money. White, who was in a Federal prison facility, telephoned defendant under the pretext that he was telephoning from his attorney's office and needed to raise money for a bond. White asked defendant about "that guy from way down south" whom White and defendant had "talked about before," remarking that he, White, needed to "get some bucks together fast." White asked defendant if defendant thought they could "do anything." Defendant quickly answered "sure." In fact, defendant indicated he had "been waiting" for such an opportunity. White was to telephone defendant as soon as White was released from prison. Near the close of the conversation, White told defendant to "start some wheels in motion" so that in a day or so White could "buy some stuff and get going." Defendant emphatically replied, "Oh yeah, it's there *** it's there." Defendant further stated, in response to White's inquiry, that White could "probably" complete the purchase with half of the price in the form of credit.

Nothing in the subsequent tape-recorded conversations indicates defendant wavered in his desire to participate in the sale. Ironically, that portion of the recorded conversations defendant claims supports his attempt to withdraw from the illegal conduct actually underscores his criminal predisposition. As the date set for the transaction neared, White told defendant that the fictitious financier, Lloyd, insisted on being present. Defendant was troubled by that development and voiced some apprehension in continuing his efforts until finally speaking with Lloyd and agreeing to meet Lloyd before the actual sale. Defendant's apprehension, however, was not due to a reluctance to engage in the illegal conduct. Instead, his nervousness was rooted in suspicions he had concerning "mid-stream" changes and was indicative of a fear of arrest, for he had seen "too many fucking police shows." For defendant, it appears, life mirrored art.

The State presented other evidence as well.

Rice testified that White had represented he could transact a "drug deal" with defendant. White had spoken to defendant, prior to

White's arrest on Federal drug and racketeering charges, concerning whether defendant could supply White with cocaine. White's first recorded telephone conversation with defendant, the relevant portions of which we mentioned above, took place the following day.

Rice stated he and fellow agent Mike Conkell were present and heard the conversations between defendant and White, as they occurred, concerning the details of the transaction. Rice also recounted his surveillance of the events of November 25, 1986, culminating in defendant's arrest upon the transaction's completion.

Lloyd described the arrangements for the actual purchase. On November 25, 1986, he arranged a meeting with defendant and White in a restaurant. After meeting Lloyd, defendant represented that he wanted to complete the transaction and stated he could obtain large quantities of cocaine for Lloyd's purchase on a weekly basis. They eventually travelled to the parking lot of a fast-food restaurant which defendant announced was near where his "connection" lived. Defendant stated he would walk to the house, obtain the cocaine, and return. Defendant did so, returning with a package containing a white powder which field tests showed to be cocaine.

The evidence presented by the State leaves no doubt that defendant possessed the requisite predisposition to support his conviction.

■■ Defendant also refers to particular remarks made by the State during rebuttal argument and contends the remarks operated to deprive him of a fair trial. The record, however, shows that defendant failed both to object to the particular remarks and to include that objection in his post-trial motion. Either of those failures is fatal to preserving the issue for review. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

Defendant's appellate counsel concedes the failure to object contemporaneously to the comments but attempts to explain away that failure. Counsel suggests that other, previous objections were sufficient to put the trial judge on notice of the prosecutor's prejudicial conduct. That argument simply lacks legal merit. Our supreme court consistently has directed that the necessary objection at trial must be made when the improper action takes place. (*People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.) Further, we find no reason to excuse defendant's waiver here under the limited plain error exception. See *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 238.

■■ Finally, defendant contends the prison term imposed was excessive in view that he had a single prior conviction for possession of burglary tools and because he was the source of support for his wife and children. Defendant also points to testimony presented in mitiga-

tion, arguing that that evidence establishes a rehabilitative potential that will not be served by the length of the sentence.

We cannot conclude the trial judge abused his discretion in sentencing defendant. (*People v. Andrews* (1989), 132 Ill. 2d 451, 548 N.E.2d 1025.) The trial judge carefully considered defendant's employment and family background, military service, and the other evidence presented in mitigation, properly balancing those factors against the large quantity of drugs involved and defendant's willing participation in the sale. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) The prison term was within the statutory 6- to 30-year sentence for which defendant was eligible. (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2).) Given the trial judge's careful consideration of sentencing factors, we must decline to substitute our own judgment simply because a different sentence might have been imposed.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.